UNITED STATES of America, Appellee,

v.

Ambrey DeWitt ALLEN, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Ann ALLEN, Appellant.

UNITED STATES of America, Appellee,

v.

Aubrey Joe ALLEN, Appellant.

Nos. 75–1295 to 75–1297.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 14, 1975.

Decided June 30, 1976.

Karl L. Kenyon, Anderson, S. C. [court-appointed counsel] (Anderson, Kenyon & Epps, Anderson, S. C., on brief), for appellants.

Thomas P: Simpson, Asst. U. S. Atty., Columbia, S. C. (Mark W. Buyck, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before CLARK, United States Supreme Court Justice, Retired,* BRYAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

CRAVEN, Circuit Judge:

Ambrey DeWitt Allen, Jr., Ann Allen and Aubrey Joe Allen were indicted by a federal grand jury sitting in South Carolina and charged with eight counts of transporting and causing to be transported in interstate commerce stolen merchandise of a value in excess of $5,000, in violation of 18 U.S.C. §§ 2314 and 2, and one count of transporting and causing to be transported in interstate commerce goods stolen from an interstate shipment, in violation of 18 U.S.C. §§ 659 and 2. At the close of the government's case, the district court granted motions to dismiss a number of the counts as to each defendant. The court submitted to the jury three counts as to Ann Allen and A. J. Allen and seven counts as to A. D. Allen. The jury returned guilty verdicts on all accounts.

All three defendants have appealed their convictions. We affirm the conviction of A. J. Allen, No. 75–1297, and also affirm the conviction of A. D. Allen, No. 75–1295. We reverse Ann Allen's conviction, No. 75–1296, and remand for a new trial.

## I.

This case was argued before the decision of the Supreme Court in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). Aware of the similarity of the issue in *Geders* to the main question in these cases, we withheld our decision, awaiting instruction from the Supreme Court. In *Geders* the trial judge ordered that during an overnight recess the defendant and his attorney could not consult "about anything." The Supreme Court held that this restriction upon attorney/client consultation "impinge[s] upon [Geder's] right to the assistance of counsel guaranteed by the Sixth Amendment." 425 U.S. at 91, 96 S.Ct. at 1337. The Court expressly reserved, however, the question

of whether a defendant's rights would be violated by an order preventing consultation "during a brief routine recess during the trial day." 425 U.S. at 89, 96 S.Ct. at 1336 n.2.

## II.

Immediately prior to taking an overnight recess, the following colloquy occurred at the close of Ann Allen's direct testimony:

THE COURT: As far as Mrs. Allen is concerned, I am going to have to—she has done everything I told her to do so I'm not going to take her in custody. Ordinarily I would have to because she is under examination. I'm going to let you continue just as it is, but you can't talk to your husband, you can't talk to your lawyer, and that goes up until you get back on that witness stand and you're finished. You understand, Mrs. Allen?

ANN ALLEN: Yes, sir.

■ The order and the overnight time period are the same as in *Geders.* Accordingly, we hold that Ann Allen's Sixth Amendment right to effective assistance of counsel was denied.

## III.

Two recesses were taken during A. D. Allen's testimony. The first occurred during the course of his direct testimony and lasted twenty minutes. Allen was told by the court that he might "step down . . . ., but you can't talk to anyone." The second recess was taken at the end of his direct testimony and while we are not told its precise duration, the court's direction was that it would last but "a minute." Again it was made clear that he was not to talk with anyone.

The restriction placed upon A. D. Allen's right to confer with his attorney presents us with the issue reserved in *Geders* : may a trial judge sequester a defendant and prevent access to his attorney during routine short recesses in the course of a trial?

* Sitting by Designation.

■ We begin with the nature of the Sixth Amendment right to counsel. It is so fundamental that there should never occur any interference with it for any length of time, however brief, absent some compelling reason. The reason advanced is the prosecutor's apprehension that defense counsel, if permitted the opportunity, will unethically coach his client. The danger asserted is that counsel's advice may significantly shape or alter the giving of further testimony by the defendant that will be untrue or a tailored distortion or evasion of the truth.

■ We think the apprehension is greatly exaggerated. Such a fear rests upon more cynicism than is justified by the performance of the bar. We think that all but very few lawyers take seriously their obligation as officers of the court and their proper role in the administration of justice. We think the probability of improper counseling, i. e., to lie or evade or distort the truth, is negligible in most cases.[1]

■ Secondly, if we must accept the assumption upon which the fear rests, we think that effective improper coaching is not so easily accomplished as some would suppose. Directors of drama spend hours, not minutes, teaching the correct inflection and demeanor to an accomplished actor to achieve a convincing performance. We think the occasional unethical lawyer is not so expert and his client not so adept in the art of deceit.

■ Thirdly, if we assume expertise in teaching deception and an adept client there remains a built-in deterrent factor. As the Chief Justice said in *Geders*:

A prosecutor may cross-examine a defendant as to the extent of any "coaching" during a recess . . . [and] could develop a record which [he] in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on remaining direct examination and on cross-examination.

425 U.S. at 89, 96 S.Ct. at 1336.

■ Finally, if a crooked defendant and his corrupt lawyer are determined to thwart justice by false testimony, deceit, and improper tailoring of testimony, we think it will avail very little to prevent contact between the two during short recesses in the course of a trial day. The fabrication of testimony and the invention of a plausible story can better be accomplished at leisure before trial.

■■ For these reasons we are inclined to think that the Sixth Amendment right to counsel ought to prevail over the extremely limited value of circumscribing that right for perhaps 20 or 40 minutes during the course of a trial day. We conclude that both the fear of lawyer contact and belief in the therapy of denial are grossly exaggerated. Were we to hold that a district judge may sequester a defendant from his lawyer during a recess, we would, presumably, have to recognize the possibility of exception to the rule. What if a defendant proved in a 2255 proceeding that he lost the presence of an essential witness because he was on the witness stand all day and could not communicate the address to counsel and had forgotten to do so previously? We are reluctant to create yet another nonfinal "decision point" upon which the district judges would have to expend their limited energies. We think the administration of such a rule, if it involved determining in each case whether prejudice resulted, would not be worth its cost. Confidently, we predict that permitting defendants to confer with counsel during recesses will not result in any more guilty persons going free.

1. While the sequestering of witnesses is of ancient origin the practice has never been universal, which suggests that the danger of influencing witnesses feared so much by some is not at all feared by others. In North Carolina, for example, invocation of "the rule on witnesses" was unheard of until very recent years. The author of this opinion spent ten years as a trial judge, state and federal, without ever once having a lawyer move the court for sequestration of witnesses and without ever directing, or being asked by a prosecutor to direct, a defendant to refrain from talking with his lawyer during a recess.

In the course of concurring in *Geders*, Mr. Justice Marshall joined by Mr. Justice Brennan expressed the viewpoint that there is no legal distinction between an overnight recess and a "brief routine recess." He also interpreted the court's opinion as meaning that *any* order barring communication between a defendant and his attorney is inherently suspect, requiring initial justification by the government, and not requiring that the defendant make a showing of prejudice.

Mr. Justice Marshall concluded:

I find it difficult to conceive of any circumstances that would justify a court's limiting the attorney's opportunity to serve his client because of fear that he may disserve the system by violating accepted ethical standards. If any order barring communication between a defendant and his attorney is to survive constitutional inquiry, it must be for some reason other than a fear of unethical conduct.

425 U.S. at 93, 96 S.Ct. at 1338.

■■■ We agree and hold that a restriction on a defendant's right to consult with his attorney during a brief routine recess is constitutionally impermissible, but we apply the new rule prospectively only. Nothing in the Constitution prevents use of the technique of prospective overruling.[2] As we said in *Lester v. McFaddon*, 415 F.2d 1101 (4th Cir. 1969), such an approach is "of great usefulness in lending protection to those who had placed their reliance upon the earlier rule against the harsh impact of *ex post facto* change." Indeed, the Supreme Court, on numerous occasions, has seen fit to make its own constitutional pronouncements of prospective application only.[3]

In the Supreme Court, the prospective rule has usually been applied in the case in which it was first announced. It is prospective only with respect to other previously tried cases. This application of a prospective rule is not an inevitable requirement. In announcing the prospective rule of *Lester v. McFaddon*, we did not apply it in that case. Nor need we do so here, when the restriction worked no harm. Allen did not object to the prohibition, and there has been no showing, nor even an allegation, that he was prejudiced by the actions of the trial judge. Accordingly, we hold that our extended application of the *Geders* rule will be applied in actuality only to trials conducted after the date of this opinion.

We have carefully considered the other numerous assignments of error and find them so lacking in merit as to require no discussion.

In No. 75–1295 the judgment of conviction of A. D. Allen is AFFIRMED.

In No. 75–1296 the judgment of conviction of Ann Allen is REVERSED.

In No. 75–1297 the conviction of A. J. Allen is AFFIRMED.

**2.** *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

**3.** *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).