Reginald A. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

No. 9712.

District of Columbia Court of Appeals.

Argued En Banc Nov. 27, 1978.

Decided June 26, 1979.

William J. Mertens, Public Defender Service, Washington, D.C., for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Barry L. Leibowitz, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.*

GALLAGHER, Associate Judge:

We granted appellant's petition for rehearing en banc to consider (1) whether a trial court order preventing appellant from consulting his attorney during a luncheon recess deprived him of the assistance of counsel guaranteed by the Sixth Amendment; and (2) whether the trial judge (a) erroneously denied without a hearing an oral motion to suppress lineup identification evidence and (b) improperly injected his

* Judge Yeagley was an Associate Judge of the court at the time of oral argument. His status changed to Associate Judge, Retired, on April 20, 1979.

own views when instructing the jury.[1] We reverse appellant's conviction and remand for a new trial.[2]

## I.

Appellant was convicted by a jury of armed robbery, robbery, and assault with a dangerous weapon.[3] The charges arose out of a holdup at gunpoint of a Safeway supermarket cashier. Appellant, who admitted that he had been in the Safeway that day, was identified by the cashier and store security officer from photographic arrays, in a lineup, and at trial.

Appellant's trial commenced in late April of 1975. After appellant testified on direct examination, a luncheon recess was called. The trial court instructed appellant as follows:

THE COURT: Since you're under oath, sir, at this point, you discuss nothing with anyone, not even with your lawyer because he's finished with you. As of now, you don't discuss your testimony with anybody, you understand?

MR. JACKSON: Yes, sir, I understand.[4]

It is our view that the trial court deprived appellant of his constitutional right to assistance of counsel at a critical stage of the criminal proceedings against him, a right "so basic to a fair trial that [its] infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

The crux of this appeal, therefore, is the proper standard for appellate review of the erroneous trial court action in this case.[5] In *Chapman v. California, supra,* the Supreme Court held that a federal harmless error rule should apply to some errors of constitutional magnitude while others are reversible automatically. *See generally* Note, *Harmless Constitutional Error: A Reappraisal,* 83 Harv.L.Rev. 814 (1970); Mause, *Harmless Constitutional Error: The Implications of Chapman v. California,* 53 Minn.L.Rev. 519 (1969). The right to counsel was particularized in *Chapman* as one of the "substantial rights" to which the harmless error rule cannot be applied. *Chapman, supra* at 23 n.8, 87 S.Ct. at 828 n.8. It had been established long before *Chapman,* however, that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). When a violation of the right to counsel is alleged, the degree of prejudice suffered by the accused, and the impact on jury deliberations often cannot be assessed on the record; in contrast, "in the normal case where a harmless error rule is applied, the error occurs at trial and its scope is readily identifiable." *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978). Thus, reversal is required, without regard to a showing of prejudice and without regard to the

---

1. We consider the instruction complained of to be ill-advised because it related the trial judge's views. But we conclude it is not prejudicial error on this record. We naturally assume the views will not be expressed again upon re-trial.

2. Appellant also claims the trial judge wrongfully excluded proffered expert psychological testimony on eyewitness identifications. The admissibility of the proffered expert psychological testimony, assertedly relevant to the credibility of eyewitnesses, was discussed and rejected by this court in *Dyas v. United States,* D.C.App., 376 A.2d 827, 831–32 (1977), as not being a proper subject for expert testimony. We hold *Dyas* applies to the particular circumstances of this case.

3. D.C. Code 1973, §§ 22-2901, -3202; § 22-2901; § 22-502, respectively. The lesser included charges of robbery and assault with a dangerous weapon were dismissed with prejudice at the time of sentencing.

4. The court issued similar "embargo" orders concerning two defense witnesses.

5. A split division of this court concluded that the trial court's error was harmless beyond a reasonable doubt, although recognizing that the trial judge "touched a constitutional nerve, when he ruled as he did." *Jackson v. United States,* D.C.App., 420 A.2d 1202 (1978) (vacated by Order of Oct. 3, 1978, granting appellant's petition for rehearing en banc).

strength of the other evidence, when a defendant is deprived of counsel's guiding hand during a critical stage of the proceedings. *See Holloway v. Arkansas, supra* at 489, 98 S.Ct. at 1181; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Hamilton v. Alabama,* 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

In *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court recently set aside a conviction where the trial court prohibited communication between defendant and his attorney during an overnight recess. The Court held that the order impinged upon defendant's right to the assistance of counsel guaranteed by the Sixth Amendment. *Id.* at 91, 96 S.Ct. at 1336. By reversing *Geders'* conviction, the Court necessarily rejected the Fifth Circuit's holding below that defendant's failure to claim any prejudice was fatal to his appeal, and implicitly accepted the reasoning typified in *United States v. Venuto,* 182 F.2d 579 (3d Cir. 1950), *i. e.,* an order barring overnight communication is inherently prejudicial. 425 U.S. at 86, 96 S.Ct. at 1334. Implicit in the Court's opinion, as the concurring opinion observed, was that "a defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice." *Geders, supra,* 425 U.S. at 92, 96 S.Ct. at 1337 (Marshall, J., concurring).

Although the Court in *Geders* dealt with an overnight recess, reserving the question of embargo orders imposed during "brief routine recesses," we perceive no reason to distinguish constitutionally on the basis of the order's duration. We agree with Mr. Justice Marshall, concurring in *Geders, supra,* 425 U.S. at 92, 96 S.Ct. at 1337, that

> the general principles adopted by the Court [in *Geders*] are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial. [Emphasis in original.]

Both federal and state courts have applied *Geders* to routine recess situations. *See, e. g., United States v. Bryant,* 545 F.2d 1035 (6th Cir. 1976); *United States v. Allen,* 542 F.2d 630 (4th Cir. 1976); *Stripling v. State,* 349 So.2d 187 (Fla.App.1977).

In *United States v. Bryant, supra,* the Sixth Circuit extended *Geders* to a trial court order forbidding consultation between defendant and her attorney during a luncheon recess, reversing the conviction. *See also Stripling, supra* (applying *Geders* to luncheon recess gag order). Since a criminal defendant is entitled to the advice of counsel throughout the trial, the court stated, an order barring communication is an abuse of discretion and a violation of defendant's Sixth Amendment right to counsel. *Bryant, supra* at 1036. Relying on *Geders,* the Fourth Circuit similarly concluded in *Allen, supra* at 633, the right to counsel is "so fundamental that there should never occur any interference with it for any length of time, however brief, absent some compelling reason." As the court stated, the Sixth Amendment right to counsel must prevail over the extremely limited value of circumscribing that right for 20 to 40 minutes during the course of a trial day.

The government does not dispute that this court's opinion in *Thompson v. Atlantic Building Corp.,* D.C.Mun.App., 107 A.2d 784 (1954), precludes any attempt in this jurisdiction to limit *Geders* on the basis of the order's duration or timing.[6] In *Thompson,* this court set aside a verdict where the trial court prohibited plaintiff, a *civil* litigant, from consulting with his attorney during the luncheon recess, stating:

> Every trial lawyer will appreciate the handicap which would result if he were prohibited from conferring with his client during a trial recess. The handicap would be greater or less under differing circumstances, but it would always be a handicap, and we do not agree with appellee that it is incumbent on appellant to show how and to what extent he was

---

6. Appellee's Brief at 19 n.39.

prejudiced by the court's ruling. [*Id.* at 785.]

Nonetheless, the government contends that *Geders* is distinguishable because the order in this case only prohibited defendant from discussing his testimony and did not, as in *Geders* prevent him from consulting his counsel "about anything." However, the trial judge's warning that appellant was not to discuss his testimony was preceded by an admonition to "*discuss nothing* with anyone." Even assuming the order was limited to discussion of testimony (as opposed to trial strategy), it would not survive constitutional challenge. Appellant had the right to discuss the entire case, including his own testimony, with his attorney. "It is not the function of the trial judge to decide ... how much consultation between a defendant and his retained counsel is necessary to adequately cope with changing trial situations. That is the function of counsel." *Commonwealth v. Werner*, 206 Pa.Super. 498, 214 A.2d 276, 278 (1965) (reversible error for trial judge to direct defendant not to discuss testimony with attorney during overnight recess).

The government further argues that the trial court sought to prevent collaboration and agreement among the defense witnesses, including appellant, on the substance of their testimony. Assuming the order was intended to prevent collusion, the trial court's instructions to the non-party witnesses would have achieved that limited purpose. In addition, improper coaching of the defendant was deemed as insufficient

justification for barring attorney–client communication in *Geders, supra*, 425 U.S. at 89–90, 96 S.Ct. at 1335, 1336, and in *Allen, supra* at 633. While one might be able to conjure a compelling reason for temporarily sealing off communication with the attorney, the record before us fails to reveal such extraordinary circumstances.

We also find unpersuasive the government argument that appellant's failure to object to the trial court order renders his Sixth Amendment claim unreachable on appeal. *See, e. g., Watts v. United States*, D.C.App., 362 A.2d 706 (1976); Super.Ct. Cr.R. 51, 52. Our decisions make provision for the exceptional case by holding that plain errors affecting substantial rights may be noticed despite failure of counsel to object at trial. *E. g., Lloyd v. United States*, D.C.App., 333 A.2d 387, 391 (1975). As we have already indicated, deprivation of counsel's assistance is presumptively prejudicial and, this right being transcendent, inherently constitutes plain error.[7] Having established a violation of his right to counsel, appellant's conviction must be set aside regardless of whether prejudice was demonstrated, and despite appellant's failure to remonstrate against the court's order.[8]

## II.

For guidance on remand, we will briefly consider appellant's contention that the trial judge erroneously denied without a hearing a motion to suppress lineup identification evidence.[9] On the day of trial de-

---

7. Counsel may be hesitant on occasion to object to the judge's action in the presence of the jury, unlike objections to prosecution conduct or to evidentiary rulings. *See, e. g.*, 3 Wright, Federal Practice and Procedure: Criminal § 842 at 345 (1969); *Braswell v. United States*, 200 F.2d 597 (5th Cir. 1952) (failure of counsel to object to prejudicial comments by the court did not preclude appellate review when the remarks affected substantial rights of the defendants).

8. This court has adopted a per se reversal approach to vindicate other substantial rights. *See, e. g., Kleinbart v. United States*, D.C.App., 388 A.2d 878 (1978) (right to a public trial); *Miller v. United States*, D.C.App., 250 A.2d 573

(1969) (defendant's right to be present in court).

9. The procedural posture of appellant's oral motion to suppress is unlikely to recur on remand, because counsel will no doubt comply with Super.Ct.Cr.R. 47–I(c), (d). Since appellant made an oral motion on the day of trial, he could obtain a hearing only by demonstrating lack of opportunity or unawareness of grounds for the motion. *See* Super.Ct.Cr.R. 12(b)(3); *Irby v. United States*, D.C.App., 342 A.2d 33, 40 (1975). The trial court nevertheless did not deny appellant's motion as untimely. *See, e. g., Crosby v. United States*, D.C.App., 383 A.2d 351 (1978).

fense counsel moved to suppress the lineup identifications made by the Safeway cashier and security officer, on the grounds that improper remarks by the police following the photographic identification tainted the lineup proceeding. Defense counsel proffered statements made by the two government witnesses that after the photographic identification, the detective confirmed that they had selected the man arrested. After the proffer the following discussion ensued regarding the police comments:

THE COURT: Wait a minute, are they [the police] saying the person they [the witnesses] have identified is the person they arrested?

DEFENSE COUNSEL: Apart from their identification.

THE COURT: Is that the only extent of the statement?

GOVERNMENT: According to that statement, that's all it is.

DEFENSE COUNSEL: Yes.

THE COURT: That's not enough. That's not enough.

We reaffirm what this court recently stated in *Duddles v. United States,* D.C. App., 399 A.2d 59, 63 (1979).

[I]n order to justify a hearing [on a suppression motion], the defendant is obliged, in his definitive motion papers, to make factual allegations which, if established, would warrant relief (based on evidence discovered of the government and, if necessary, proffered from defendant's own view of the case).

The remarks made by the police here, although inadvisable and better left unsaid, were not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *See, e. g., Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). While the gratuitous remark may have confirmed the identification in the minds of the witnesses, the fact remains the witnesses had shown no uncertainty when identifying appellant and possessed adequate basis for doing so. *See, e. g., United States v. Person,* 155 U.S.App.D.C. 455, 478 F.2d 659 (1973) (statement by police officer to witness after lineup identification that she had "done well" did not taint in–court identification). *See also Harley v. United States,* D.C.App., 373 A.2d 898 (1977) (remarks after photo identification that man identified had raped other women in neighborhood did not taint lineup identification); *Marshall v. United States,* D.C.App., 340 A.2d 805 (1975) (police remark prior to lineup, that boy identified by photo would be in lineup, did not render lineup identification unduly suggestive). Here, neither witness hesitated to identify appellant from a photograph, having had sufficient time to observe the robber, at close range, in the store. Thus, we cannot say appellant was unduly prejudiced by the denial of his motion without a hearing.[10]

*Reversed and remanded for a new trial.*

---

**10.** The independent evidence which appellant claimed had been revealed to the witnesses was that the license plate number copied down by the security officer belonged to appellant. Even if established, the remark would not be impermissible. *See Fludd v. United States,* D.C.App., 336 A.2d 539 (1975). At trial, neither of the witnesses mentioned any police remarks regarding other evidence that appellant committed the crime. The cashier testified that the police said only "that's the guy we picked out," (in fact, appellant was not arrested at the time the cashier made her photo identification). The security officer was asked, at trial:

Q. Now, after you picked out the photographs, did Detective Mack or any other detective who was there at the time, say anything to you about or indicated that they had other evidence that this might be the person who committed the offense?
A. No. The only thing they told me they had a suspect in custody.
Q. That was before?
A. This was after he showed me the photographs.
Q. After he showed you the photographs and you picked out that one, did he tell you that was the guy they had in custody?
A. True.

NEBEKER, Associate Judge, with whom HARRIS, Associate Judge, and YEAGLEY, Associate Judge, Retired, join, concurring in part and dissenting in part:

My disagreement with the majority centers on whether the harmless error rule [1] must be subordinated by an absolute constitutional rule in this case. I deem the majority opinion for the division to have properly and accurately determined that the error in foreclosing attorney–client conferences during the lunch recess was harmless. In the interest of brevity I refer the reader to that opinion. *See Jackson v. United States,* D.C.App., 420 A.2d 1202 (1978). My purpose for further elaboration is to expose what I deem to be erroneous analysis in the majority opinion. Without that kind of analysis I respectfully submit that the majority could not arrive at the absolute rule which it announces.

The Court in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), was confronted with a prompt and specific objection to the inhibiting ruling of the trial judge. Counsel had said he had a right to confer about matters other than the upcoming cross–examination and that he wished to discuss problems relating to the trial with his client during the overnight recess. After further colloquy with the trial court, defense counsel persisted in his objection. The Supreme Court was therefore confronted with a situation making it wholly unnecessary to consider a failure to claim prejudice. As Judge Harris observed in the division's majority opinion at footnote 6, the Supreme Court made it quite clear that its holding was most restricted. Indeed, Judge Gallagher in his dissent stated that the Supreme Court left open the constitutional question presented in this case. I might add that the question is still open as to routine recesses where the inhibiting order

is either objected to or, as in this case, not protested at all.

The majority, having made this initial analytical error in its reading of *Geders v. United States, supra,* then proceeds to a second weak spot in its analysis. It says "implicit in the Court's opinion [*Geders*], as the concurring opinion observed, was that 'a defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice.'" There is no such implicit conclusion or holding in the Chief Justice's opinion, for as I have already observed, the Court had a record rife with prejudice stemming from counsel's repeated efforts in protest of the restriction. Moreover, I respectfully submit that the majority does violence to Mr. Justice Marshall's concurring statement. *Id.* at 92, 96 S.Ct. at 1337. Of necessity Mr. Justice Marshall was referring to a "claim" made at the trial level. Surely one who makes such a trial level complaint need not thereafter make a more specific or preliminary showing of prejudice. "Such an order [made in the face of a request to consult] is inherently suspect and requires initial justification by the government." *Id.* at 92–93, 96 S.Ct. at 1337.

A reading of the cases from "[o]ther courts", *id.* at 89, 96 S.Ct. at 1335, cited in the Court's opinion as reflective of error inhering in a protested overnight communications ban, can lead to only one conclusion: that an objection or protest to the ban is sufficient to preserve the point without a showing of specific prejudice. In each case there was an objection to the inhibiting order.[2]

When, in footnote 2, the Chief Justice specifically refrained from reaching inhibiting orders during brief routine recesses, he

1. *See* D.C. Code 1973, § 11–721(e) which states:

> On the hearing of any appeal in any case, the District of Columbia Court of Appeals *shall* give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties. [Emphasis added.]

My reliance on this provision does not suggest that I would or could exalt it over the Constitu-

tion. I simply find no constitutional requirement that the harmless error rule is inapplicable in this case.

2. *See United States v. Venuto,* 182 F.2d 519 (3d Cir. 1950); *People v. Noble,* 42 Ill.2d 245, 248 N.E.2d 96 (1969); *Commonwealth v. Werner,* 206 Pa.Super. 498, 214 A.2d 276 (1965). *But see People v. Prevost,* 219 Mich. 232, 189 N.W.2d 92 (1922).

cited three federal cases as examples.[3] In all three there was no meaningful protest (in two there was no objection at all) and a holding of no prejudice resulted in affirmance. *Geders* cannot be read as establishing a per se rule in which lack of prejudice plays no part.[4] These cases cited in *Geders* demonstrate that a good faith objection presumes a need to converse and when that need is circumscribed, prejudice results.

I therefore conclude that this court, even sitting en banc, is not freed by anything said in *Geders* from the statutory command to "give judgment after examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." D.C. Code 1973 § 11–721(e). I would apply that rule as the majority of the division did and conclude that in the absence of any demonstration of prejudice by the appellant, the judgment of conviction should be affirmed.[5]

---

**3.** *United States v. Schrimsher,* 493 F.2d 848 (5th Cir. 1974); *United States v. Crutcher,* 405 F.2d 239 (2d Cir. 1968); *United States v. Leighton,* 386 F.2d 882 (2d Cir. 1967).

**4.** A fourth case, *Krull v. United States,* 240 F.2d 122 (5th Cir. 1957), cited by the Court, addresses the issue of the defendant's right, while incarcerated, to converse with his attorney without the presence of a warden. The court held that the right of a defendant to consult with his attorney privately is a right which may have limitations such as this one imposed upon it.

The *Geders* decision, I submit, referred to *Krull* to emphasize the court's power to circumscribe the attorney–client communication. The three federal cases mentioned above are additional examples of that power. The fifth case, *Pendergraft v. State,* 191 So.2d 830 (Miss. 1966), presents different facts. In *Pendergraft* the inhibiting order was imposed during a two–hour recess and the attorney objected. Consistent with other cases where the attorney objected, prejudice was presumed.

**5.** I concur generally in Part II of the majority's opinion.