John H. BAILEY, Appellant,

v.

STATE of Delaware, Appellee.

Supreme Court of Delaware.

Submitted Nov. 16, 1979.

Decided July 2, 1980.

Opinion July 17, 1980.

Supplemental Opinion Sept. 30, 1980.

See also, Del., 424 A.2d 23.

Walter S. Rowland (argued), Wilmington, for appellant.

Francis A. Reardon, Deputy Atty. Gen. (argued), Wilmington, for appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

HORSEY, Justice.

Defendant, John H. Bailey, appeals Superior Court's denial of his Rule 35(a) motion for postconviction relief as to his convictions in December, 1975 of manslaughter and possession of a deadly weapon during the commission of a felony (the manslaughter). Defendant was sentenced on February 5, 1976 to imprisonment for 30 years for the manslaughter and 10 years for the felony—weapon offense, the sentences to run consecutively.

Two issues are raised by this appeal: (1) whether defendant was denied his Sixth Amendment right of access to counsel when the Trial Judge instructed defendant upon leaving the witness stand not to discuss his "testimony with anybody" during an overnight recess of the trial; and (2) whether defendant was subjected to double jeopardy

in violation of his Fifth Amendment right through the imposition of consecutive sentences for manslaughter and possession of a deadly weapon during the commission of the felony when both offenses arose out of the same transaction.[1]

## I

The convictions stemmed from the shooting of Sheila Ferrell, a 12 year old girl, which occurred in Wilmington, Delaware on August 17, 1975 within a block of defendant's house and hers. Enraged in the belief that the victim and other children had stolen furniture from his house and fruit from a tree in his backyard, defendant chased the victim and her companions down the street from his house and in the chase the victim was shot in the back and subsequently died. Five eyewitnesses testified that defendant had shot the victim after she ignored a command to stop and a warning shot. Though he fled the scene and was later found hiding in the attic above his garage, Bailey denied shooting the girl, stating that some unknown third person was responsible.[2]

Indicted for murder in the first degree and for possession of a deadly weapon during the commission of a felony, defendant was convicted, after trial by jury, of manslaughter and the felony–weapon charge, for which he was sentenced, as previously stated, to consecutive prison terms for each offense.

Thereafter, defendant filed a motion for new trial, which was denied, *State v. Bailey*, Del.Supr., 352 A.2d 415 (1976); and defendant's convictions were later affirmed by this Court on defendant's direct appeal.

*Bailey v. State*, Del.Supr., 363 A.2d 312 (1976).[3] An appeal filed in the United States Supreme Court was withdrawn; and a writ of certiorari was later filed and denied February 2, 1977. 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977).

The denial of counsel question was raised for the first time with the filing on January 17, 1979 in the Superior Court of defendant's pending motion under Rule 35 for postconviction relief.[4] On May 17, 1979 the Superior Court denied defendant's motion, after which defendant docketed this appeal. The double jeopardy question now presented was first raised by defendant on June 30, 1978 in a petition for writ of habeas corpus filed in the United States District Court for the District of Delaware. Because this issue had not been raised previously in our State courts, action in the federal court was stayed pending exhaustion of State remedies. *Bailey v. Redman*, D.Del., C.A.No. 78–277 (October 11, 1978).

## II

We take up first defendant's Sixth Amendment claim of denial of access to counsel.

The facts pertinent to this claim are as follows. In the third week of defendant's four week trial defendant took the stand on December 9, 1975 in his own defense. He proceeded to testify on direct examination for somewhat over two hours and until time for the luncheon recess. After lunch, defendant resumed his testimony on direct examination and completed it about mid–afternoon. The State then immediately began its cross–examination of defendant

---

1. The first issue was decided by Order dated July 2, 1980. By the same Order, supplemental briefing was ordered on the second issue in light of *Hunter v. State*, Del.Supr., 420 A.2d 119 (1980); hence decision on the second issue is reserved.

2. For a more detailed statement of the facts see *Bailey v. State*, Del.Supr., 363 A.2d 312 (1976).

3. Defendant's motion for new trial raised some 12 issues, as did his direct appeal to this Court; but none of the issues raised by defendant

included the Sixth Amendment claim which he now asserts, or his double jeopardy claim.

This Court also denied defendant's motion for a certificate of reasonable doubt sought in conjunction with his appeal, the purpose of which was to secure a stay of execution of the judgment pending appeal so that he might be admitted to bail. *Bailey v. State*, Del.Supr., 352 A.2d 411 (1976); reargument denied, *Bailey v. State*, Del.Supr., 354 A.2d 751 (1976).

4. Defendant's present counsel was not his attorney at trial or on direct appeal.

which continued until 5:15 p. m. when the Court decided to recess the trial until the following day. Because the State had not completed its cross–examination, the Trial Judge, before recessing the Court for the evening, gave the following instruction to defendant:

"Mr. Bailey, during the evening recess, I caution you and instruct you that you are not to discuss your testimony with anybody until you have completed your testimony in this case. Do you understand? "The Witness: (The witness nodded affirmatively.)"

The instruction was neither questioned nor objected to by Bailey's counsel and trial was thereupon recessed from 5:15 p. m. on December 9, 1975 until 10:00 a. m. the following day. Defendant had been in the State's custody at all times during the course of the trial and was returned to the custody of the State correctional authorities and to the State prison to spend the night.

The following day when Court reconvened, no question was raised as to the propriety of the previous afternoon's instruction nor was any objection made that the Court's ruling had interfered with defendant's access to counsel. Defendant resumed the stand; and the State completed its cross–examination of defendant that morning.[5] Thereafter the trial continued for another week, without any mention being made of the Court's December 9 testimonial instruction, and trial was completed on December 16, 1975 when the jury's guilty verdicts were returned.

Rejecting defendant's Sixth Amendment contention, the Motion Judge, who had also been the Trial Judge, stated that his order had not denied defendant access to counsel but had only prevented defendant from discussing his testimony with his attorney. And the Court below concluded that a testimonial limitation was permissible under current Delaware and federal Sixth Amendment decisional law.[6]

Defendant raises three objections to the Superior Court's Rule 35 ruling. *First*, defendant states that the Trial Court's order may not now be construed as meaning that defendant was "free to communicate [with his attorney] about anything except his testimony" because such construction is at variance with the trial instructions and the uncontested facts on which the Rule 35 motion was heard–namely, defendant's statement that he was sequestered from *any* contact with his attorney during the 17–hour overnight recess. *Second*, defendant argues that *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) is factually indistinguishable from the case at bar and controlling. And *third*, defendant contends that under *Jackson v. United States*, D.C.App., 420 A.2d 1202 (1979) (en banc), a decision rendered after the ruling below, the rule in *Geders* has been extended to invalidate a testimonial as well as blanket limitation on access to counsel and interpreted to hold that any limitation on access to counsel constitutes plain error requiring reversal. Hence, the 1975 trial limitation imposed on Bailey amounted to reversible error even though counsel did not object to it, thereby entitling Bailey to a new trial, so defendant argues.

---

**5.** During cross–examination defendant's counsel did on three occasions object to the State's cross–examination as repetitious and beyond the scope of direct, counsel stating:

"If it please the Court, I'm objecting again to this entire line of questioning. We have been through it yesterday. Mr. Denny has spent the whole night pouring over his notes going into those questions over and over again. It's entirely unfair and prejudicial."

The objections were overruled by the Court.

**6.** *The Trial Judge stated:*

"In the case at bar petitioner was not sequestered or deprived of contact with his attorney. Defendant was free to communicate about anything except his testimony. The sole purpose for the cautionary instruction was to prevent the possibility of any improper influence from any source.

. . . . .

"Petitioner has not presented any controlling authority to the Court to indicate that the limited instruction given prior to an overnight recess resulted in a deprivation of his Constitutional right to effective assistance of counsel. This aspect of the motion must, therefore, be denied."

For the reasons hereafter stated, we decline to adopt *Jackson*'s interpretation of *Geders* and affirm the denial of defendant's Rule 35 motion on the ground that under the facts of this case any error in the Court's instruction was harmless beyond a reasonable doubt.

### A.

Taking up defendant's first argument, we cannot accept defendant's construction of the Trial Judge's ruling as imposing a blanket embargo or sequestration order upon any access of defendant to counsel during the overnight recess. The instruction was precisely and simply stated. Defendant was not to "discuss [his] testimony with anybody" until he had completed his "testimony." Defendant was clearly not told that he could not confer with counsel about anything. Counsel was not mentioned in the instruction but since the prohibition extended to "anybody", it must be construed as including counsel; and the Court below says that was its intention. Defendant now argues that he understood the instruction to mean that he should not discuss "anything" with counsel; but clearly that is not what the Trial Judge said.

Further, we do not agree with defendant that the facts were "established" to the contrary on the pleadings of the Rule 35 motion. Suffice it to say that the State in its responsive pleading referred to the Court's instruction as a bar against defendant discussing "his testimony" with anyone.[7]

### B.

We turn now to defendant's contention that the ruling in *Geders* controls this case.

In March, 1976, three months after the trial of the instant case was concluded, the United States Supreme Court held in *Geders* that an embargo directing a criminal defendant not to talk to his attorney "about anything" during an overnight recess of his trial deprived defendant of his Sixth Amendment right to the assistance of counsel. The Supreme Court ruled:

> "The challenged order prevented petitioner from consulting his attorney during a 17–hour overnight recess, when an accused would normally confer with counsel. We need not reach, and we do not deal with limitations imposed in other circumstances. We hold that an order preventing petitioner from consulting his counsel 'about anything' during a 17–hour overnight recess between his direct– and cross–examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." 525 U.S. at 91, 96 S.Ct. at 1337.

The Court below distinguished *Geders* on the ground that the *Geders'* order completely denied defendant access to counsel, whereas Bailey "was free to communicate [with his attorney] about anything except his testimony." The distinction has merit, particularly since the Supreme Court in *Geders* also had before it an original testimonial limitation that the trial court had later broadened into a "blanket embargo order."[8] Thus, the court had the opportunity to rule on the validity of a testimonial limitation order as well, but quite deliberately, it appears, chose to limit its decision to the trial judge's expanded blanket embargo upon defendant's access to counsel.

And post–*Geders* decisional law–until *Jackson*–applied *Geders* only to invalidate

---

7. However, for the reasons hereafter stated, we do not base our decision on the limiting nature of the instruction given.

8. *Geders* discloses that the sequestration order arose in the following manner. Prosecution had proposed that defendant be instructed not to discuss "the case overnight with anyone." Defense counsel immediately objected. The trial judge initially determined to give a more limited instruction to defendant that he not discuss his "testimony" with anyone; and he

had so instructed defendant–after defense counsel had acquiesced in the instruction. Following a rather lengthy reported colloquy concerning the limitation of the scope of the embargo, the trial judge elected to broaden his instruction to bar defendant from talking to his attorney "about anything." Defense counsel then renewed his objection as depriving defendant of his Sixth Amendment right of access to counsel.

blanket embargoes denying a criminal defendant access to counsel during trial recesses. *See, e. g., United States v. Allen,* 4th Cir., 542 F.2d 630 (1976); *United States v. Bryant,* 6th Cir., 545 F.2d 1035 (1976); *Stripling v. State,* Fla.App., 349 So.2d 187 (1977); *Commonwealth v. Logan,* Pa.Supr., 456 Pa. 508, 325 A.2d 313 (1974). *But see Commonwealth v. Barber,* Pa.Super., 250 Pa.Super. 427, 378 A.2d 1011 (1977).

■ In our view, a testimonial limitation does not constitute a *per se* Sixth Amendment infringement of a defendant's right of access to counsel.[9] While in theory a testimonial limitation may not be distinguishable from a blanket sequestration in the sense that each may impinge in varying degrees on access to counsel, we are not dealing in abstract propositions. The circumstances must be examined. That means we must determine whether under the record before us this defendant's access to counsel had been prejudicially interfered with. Just as in *Geders* the court did not determine the issue in the abstract but went to the record to see whether defendant had been prejudiced by the blanket embargo,[10] so, too, must we look to the record to determine whether under the facts of this case John H. Bailey was prejudiced by the testimonial limitation that was imposed upon him.

In the instant case the Court's order, a testimonial limitation imposed but one evening upon defendant in a four week trial, was not challenged or even questioned by defense counsel—an experienced and knowledgeable criminal lawyer. Nor did counsel, at any time later in the trial, or thereafter, on motion for new trial or on direct appeal

to this Court contend that defendant's Sixth Amendment right of access to counsel had been infringed upon.

In contrast, in *Geders,* defense counsel, after acquiescing in an initial testimonial limitation, thereafter explicitly and specifically objected to the court's blanket sequestration order—claiming it to deny his client his Sixth Amendment right of access to counsel. And the Supreme Court, in its holding, determined that a mandate not to talk to counsel about anything "plac[ed] a sustained barrier to communication between a defendant and his lawyer." 425 U.S. at 91, 96 S.Ct. at 1337. While the sustained barrier is the heart of the matter in *Geders,* it was not present here where the Trial Court's comment related to testimony only and did not pose a communication barrier between defendant and his attorney. Equally important, here, the limitation order was never challenged or even questioned by defendant's trial counsel—until three years later when the question was first raised.

Defendant responds that no trial objection was necessary for the instructional limitation to constitute reversible error because under *Geders* prejudice will be presumed. But neither the facts nor the holding in *Geders* supports this construction.

Certiorari had been granted in *Geders* to resolve a conflict between the Fifth and the Third Circuits as to whether actual prejudice need be shown to sustain a Sixth Amendment claim of denial of access to counsel.[11] But both Circuit cases, *Fink* and *United States v. Venuto,* 3rd Cir., 182 F.2d

---

9. The only apparent pre–*Geders* authority to the contrary is *Commonwealth v. Werner,* Pa. Super., 206 Pa.Super. 498, 214 A.2d 276 (1965) and its companion decision, *Commonwealth v. Peetros,* Pa.Super., 206 Pa.Super. 503, 214 A.2d 279 (1965), which Pennsylvania's highest court distinguished and chose not to follow in *Commonwealth v. Scoleri,* Pa.Supr., 432 Pa. 571, 248 A.2d 295 (1969).

10. Indeed, the Supreme Court expressly limited its holding in *Geders,* stating, "We need not reach, and we do not deal with limitations

imposed in other circumstances." 425 U.S. at 91, 96 S.Ct. at 1337.

11. The Fifth Circuit had affirmed Geders' conviction in *United States v. Fink,* 5th Cir., 502 F.2d 1 (1974) on the ground that defendant had not shown any prejudice to have resulted from the trial court's sequestration order—even though it had been challenged. In *United States v. Venuto, supra,* the Third Circuit had ruled that prejudice need not be shown for a Sixth Amendment right to be found to have been impinged upon.

519 (1950) involved challenged sequestration orders.[12]

The Supreme Court in *Geders*, by reversing *Fink* and following *Venuto* impliedly ruled that actual prejudice need not be shown for a Sixth Amendment right to be found to have been violated. However, *Geders* clearly does not hold that any instructional limitation upon a criminal defendant's access to counsel constitutes plain or reversible error regardless of the nature of the limitation and whether or not objected to at trial.[13] Indeed, plain error is never referred to in *Geders*; and under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.3d.2d 705 (1967) the concept that all federal constitutional errors must be deemed harmful regardless of the facts and circumstances was expressly rejected. 386 U.S. at 21, 22, 87 S.Ct. at 826–827.

Thus, we conclude that the Trial Judge's testimonial limitation ruling was not erroneous under *Geders* because the *Geders* holding does not apply to the present facts. However, even if the *Geders* rule does apply, then the Trial Judge's error was harmless beyond a reasonable doubt, for the reasons hereafter stated.

## C.

This brings us to *Jackson v. United States, supra,* upon which defendant heavily relies. There it was held to be plain error for a trial court to impose any limitation upon a defendant's access to counsel during a trial luncheon recess. The court thereby reversed a panel decision that defendant's failure to object to the instruction rendered the error harmless beyond a reasonable doubt. Relying on *Chapman v. California, supra,* the majority (erroneously, we believe) read *Chapman*[14] into *Geders* and concluded that *Geders'* statement that actual prejudice need not be shown was tantamount to holding that prejudice would be presumed–whether or not the instructional limitation had been objected to. The Court stated:

> "It is our view that the trial court deprived appellant of his constitutional

**12.** In *Venuto,* defendant had been instructed not to discuss "this case with anybody" during an overnight recess of a four day trial while defendant was testifying on cross–examination. In ruling that the instruction deprived defendant of his right of access to counsel, the court rejected the prosecution's "contention that defendant and his counsel must prove affirmatively the exact prejudice produced by [the instruction]." 182 F.2d at 522. But, it appears that counsel had not only objected to the instruction but also moved for mistrial.

**13.** As previously stated, in *Geders* the Court held that an "order preventing petitioner from consulting his counsel 'about anything' during" an overnight recess violated his right to counsel. 425 U.S. at 91, 96 S.Ct. at 1336. It is significant to note that the Court had outlined in some detail the "events of the day's trial", 425 U.S. at 88, 96 S.Ct. at 1335, which it is a common practice for an accused and counsel to discuss. But the Court did not include in that cataloging a discussion of the accused's testimony or the "guiding hand of counsel" as to cross-examination. Apparently, the omission was not an oversight because when the Court discussed the impact of a sequestration order on a defendant, it said that he "has the opportunity to discuss his testimony with his attorney up to the time he takes the witness stand." 96 S.Ct. at 1335. And the Court again made the same point when it held that a trial judge

"may direct that the examination of the witness [defendant] continue without interruption until completed." 96 S.Ct. at 1336. Such discretion in a trial judge clearly implies that there is not a constitutional right to the aid of counsel about one's testimony while under cross–examination.

**14.** The question in *Chapman* was not a Sixth Amendment right to counsel but whether defendant's jury trial rights had been infringed by prosecutor's comments in summation as to defendants' failure to take the stand in their own defense. While holding that such errors were not harmless, the court ruled that there could indeed be harmless error in cases involving constitutional rights violations but such errors were required to be harmless beyond a reasonable doubt. As to right to counsel, the court only made passing reference to *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) in the following statement:

> "Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call for reversal." 386 U.S. at 22–3, 87 S.Ct. at 827–828 (footnote reference made to *Gideon v. Wainwright, inter alia* ).

right to assistance of counsel at a critical stage of the criminal proceedings against him, a right 'so basic to a fair trial that [its] infraction can never be treated as harmless error.' *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)." At 1203.

The Court added:

"We also find unpersuasive the government argument that appellant's failure to object to the trial court order renders his Sixth Amendment claim unreachable on appeal. *See, e. g., Watts v. United States,* D.C.App., 362 A.2d 706 (1976); Super.Ct.Cr.R. 51, 52. Our decisions make provision for the exceptional case by holding that plain errors affecting substantial rights may be noticed despite failure of counsel to object at trial. *E. g., Lloyd v. United States,* D.C.App., 333 A.2d 387, 391 (1975). As we have already indicated, deprivation of counsel's assistance is presumptively prejudicial and, this right being transcendent, inherently constitutes plain error. Having established a violation of his right to counsel, appellant's conviction must be set aside regardless of whether prejudice was demonstrated, and despite appellant's failure to remonstrate against the court's order." At 1205. (footnotes omitted)

The *Jackson* majority thereby reversed a panel majority decision which had held the trial court's sequestration order to have been harmless error by reason of defense counsel's failure to object to the instruction. In their dissent, the en banc majority opined that the majority had misread *Geders,* stating:

"The Court in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), was confronted with a prompt and specific objection to the inhibiting ruling of the trial judge. Counsel had said he had a right to confer about matters other than the upcoming cross–examination and that he wished to discuss problems relating to the trial with his client during the overnight recess. After further colloquy with the trial court, defense counsel persisted in his objection. The Supreme Court was therefore confronted with a situation making it wholly unnecessary to consider a failure to claim prejudice.

\*   \*   \*   \*   \*   \*

The majority, having made this initial analytical error in its reading of *Geders v. United States, supra,* then proceeds to a second weak spot in its analysis. It says 'implicit in the Court's opinion [*Geders*], as the concurring opinion observed, was that "a defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice." ' There is no such implicit conclusion or holding in the Chief Justice's opinion, for as I have already observed, the Court had a record rife with prejudice stemming from counsel's repeated efforts in protest of the restriction.

\*   \*   \*   \*   \*   \*

*Geders* cannot be read as establishing a per se rule in which lack of prejudice plays no part. These cases cited in *Geders* demonstrate that a good faith objection presumes a need to converse and when that need is circumscribed, prejudice results." At 1207–1208. (footnote omitted)

*Jackson* represents a departure from *Geders* in two significant respects: *first,* in ruling that testimonial limitations may not be distinguished from blanket embargoes in terms of infringement on Sixth Amendment rights; [15] and *second,* in ruling that

**15.** Until *Jackson,* federal decisional law that followed *Geders* had applied *Geders* only to invalidate blanket embargo orders denying a criminal defendant access to counsel during trial recesses: *United States v. Bryant, supra,* (new trial granted by reason of defendant being ordered not to talk with counsel during a noon-hour recess occurring while defendant was giv-

ing direct testimony); and *United States v. Allen, supra,* (new trial granted one defendant based on an order that he and his attorney could not consult "about anything" during an overnight recess occurring while he was on the stand; but denying new trial as to a co–defendant who had been directed not to "talk to anyone" during routine brief trial recesses oc-

any judicial limitation upon a criminal defendant's access to counsel during trial constitutes plain error because inherently prejudicial.

As we have stated above, to reach this latter holding, *Jackson* has read into *Geders*, improperly we think, the dictum in *Chapman* that harmless error may never result from an interference with a criminal defendant's right to representation by counsel under *Gideon v. Wainwright, supra.*

■ We agree with the minority in *Jackson* that *Geders* may not be read as holding that prejudice will be presumed from a limitation on access to counsel even in the absence of an objection or challenge or as adopting a plain error rule as to an instructional limitation. Rather, *Geders* holds that where a blanket embargo has been objected to at trial, Sixth Amendment rights will be found to have been infringed without proof being required that actual prejudice resulted. But conversely, where no objection is raised at trial, *Geders* does not hold that the

Sixth Amendment precludes application of the harmless error rule–*Jackson* to the contrary notwithstanding. We think that *Geders* and all cases cited therein except *Werner* adopt this approach to a Sixth Amendment limitation question.[16]

### D.

■ Thus, the ultimate question becomes–was defendant harmed by the Trial Court's instruction? On the basis of the record in this case, we find any error to have been harmless beyond a reasonable doubt. No objection was made, challenge taken or question raised at trial or on direct appeal that the testimonial limitation placed on defendant interfered with his access to counsel.[17] In this case absolutely no factual showing of prejudice has been made by defendant apart from his statement made three years later, in his Rule 35 motion, that the testimonial limitation deprived him of access to counsel. We do not consider such a statement–standing alone–

curring in the course of his direct testimony)–on the reasoning that this rule being an extension of *Geders* should only be applied prospectively and not retroactively to this defendant as to whom "the restriction worked no harm." 542 F.2d at 654.

**16.** A number of cases are cited in *Geders* as precedent for the Court's statement, "Other courts have concluded that an order preventing a defendant from consulting his attorney during an overnight recess infringes upon this substantial right [to counsel]." 425 U.S. at 89, 96 S.Ct. at 1336. Four of the cited cases specifically discuss the prejudice issue and conclude that there was no objection lodged and, therefore, no prejudice. *United States v. Schrimsher*, 5th Cir., 493 F.2d 848 (1974); *United States v. Crutcher*, 2d Cir., 405 F.2d 239 (1968), cert. denied 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). Another found that even though there had been an objection, "the objection appears to us an attempt to sow reversible error into the record, rather than an effort to indicate to the Trial Judge that the attorney and client had something to discuss." *United States v. Leighton*, 2d Cir., 386 F.2d 822, 823 (1967). The court affirmed, concluding that there was no prejudice. Another, *Krull v. United States*, 5th Cir., 240 F.2d 122, cert. denied 353 U.S. 915, 77 S.Ct. 764, 1 L.Ed.2d 668 (1957), did not involve an instructional embargo, but rather the analogous situation of the presence of a guard during attorney–client con-

versations. The court found no prejudice. Two state court decisions involved specific contemporaneous objections to embargo orders and findings of denial of right to counsel in each. *People v. Noble*, Ill.Supr., 42 Ill.2d 425, 248 N.E.2d 96 (1969); *Pendergraft v. State*, Miss.Supr., 191 So.2d 830 (1966). In *United States v. Venuto, supra,* reversal followed defendant's direct appeal of his objection to the inhibiting order and denial of motion for mistrial by reason thereof. *Werner, supra,* stands alone in granting relief as to a limitation order on access to counsel which was not objected to at trial. However, objection was apparently raised on motion for new trial and reversal occurred on direct appeal. Moreover, *Werner's* reliance on *Venuto* appears misplaced since the order in *Venuto* had been objected to at trial. Further, *Werner* was undermined by *Commonwealth v. Scoleri*, Pa.Supr., 432 Pa. 571, 248 A.2d 295 (1969) (denying writ of habeas corpus based on trial court's instructional limitation on defendant's access to counsel over a lunch–hour recess–as waived by failure of counsel to object at trial or in post–trial motions).

**17.** Compare *United States v. Venuto, supra,* where defendant objected at trial, moved for mistrial, and made the sequestration order the basis for his direct appeal. Likewise in *Commonwealth v. Werner, supra,* the limitation order was found to be invalid on direct appeal of denial of defendant's motion for new trial and for arrest of judgment.

to demonstrate prejudice. The fact that it took defendant over three years to determine the existence of an alleged denial of access to counsel issue demonstrates the lack of impact that the Court's testimonial limitation had upon defendant and counsel at the trial of this case.

Nor may any prejudice be presumed. At the time the instruction was given the trial was in its third week and was to continue for another week. The comment was made immediately following routine instructions to the jury not to discuss the case or to read about it. The comment consisted of one sentence in a four–week trial that has not been demonstrated to have resulted in any interference with access to counsel. No re–direct examination of defendant followed the completion of the State's cross–examination the following day. And defendant has not made any record to show that either he or his trial counsel wanted to discuss, in Chief Justice Berger's words, "the events of the day's trial" [18] during the evening recess and was prevented from doing so.

In short, absolutely no showing has been made that defendant was prejudiced by the limitation in question, and we construe the objection raised here as purely and simply an after–thought. In *Washam v. State*, Del. Supr., 235 A.2d 279 (1967), former Justice Carey of this Court, in rejecting a Rule 35 motion claiming reversible error based on remarks of the prosecution as constitutionally impermissible, stated:

> "We note that the complaints made here were never raised in the Superior Court; there was no objection or motion to strike, no request to instruct the jury to disregard them, no application for a mistrial, and no motion for a new trial; according to the docket entries, the only application made to the Court below was one under Criminal Rule 35(b) for reduction of sentence. Had proper request been made at trial, these errors could have been easily cleared up at that time by the trial Judge. If the errors were so plain, so significant and so damaging as

appellant now contends, it is difficult to understand his failure to ask the Court below to correct them." 235 A.2d at 281. We find these remarks apropos to this case, given its procedural history.

■ Thus, applying *Geders* retroactively to the trial ruling in the instant case would elevate what is at worst a technical mistake, without any discernible consequences of any kind, to reversible error. Finding any error of the Trial Court to have been harmless beyond a reasonable doubt and the testimonial limitation not objected to, we affirm under *Geders* and its supporting authorities. See also *United States v. Allen, supra*, where the court, finding no harm to have resulted from a *Geders*–type instructional limitation, refused to apply any extension of the *Geders* rule retroactively where the "restriction worked no harm." 542 F.2d at 654.

In summary, (1) we hold that the *Geders* rule of presumed prejudice resulting from an instructional denial of right of access to counsel during an overnight trial recess may not be invoked in the absence of some objection or protest raised thereto at the trial level; (2) we reject *Jackson's* extension of *Geders* to bar any instructional limitation on access to counsel as plain error even in the absence of objection or protest–as inadvisable and contrary to the overwhelming weight of authority; (3) we find any error in the instructional limitation as to this defendant to have been harmless beyond a reasonable doubt absent evidence in the record of any objection or question raised thereto before the Trial Court or on direct appeal; and (4) even if consideration should be given to extending the rule in *Geders* to testimonial limitations whether or not objected to, retroactive application would not be appropriate, especially where no resulting prejudice has been shown.

SUPPLEMENTAL OPINION

This 29th day of September, 1980,

Upon consideration of the briefs and contentions of counsel and supplemental letter

**18.** *Geders v. United States*, 425 U.S. at 88, 96 S.Ct. at 1335.

memoranda on the remaining issue herein of double jeopardy in sentencing, it appears to the Court that:

(1) Defendant, John H. Bailey, was convicted in Superior Court of manslaughter (11 *Del.C.* § 632) and possession of a deadly weapon during the commission of a felony (manslaughter) (11 *Del.C.* § 1447). This Court affirmed the judgment. *Bailey v. State*, Del.Supr., 363 A.2d 312 (1976). See also *Bailey v. State*, Del.Supr., 352 A.2d 411 (1976) and *Bailey v. State*, Del.Supr., 354 A.2d 751 (1976).

(2) For these convictions defendant was sentenced to consecutive terms of imprisonment consisting of 10 years for the weapons offense and 30 years for his manslaughter conviction.

(3) Thereafter, defendant filed in Superior Court a Rule 35 motion for postconviction relief which was denied.

(4) Defendant appealed, asserting two arguments in support thereof.

(a) He "was deprived of his 6th Amendment right to counsel under the Constitution of the United States when by order of the Trial Court he was denied access to counsel during a seventeen hour recess in the midst of his cross–examination at his trial on the capital charge of first degree murder and possession of a deadly weapon"; and

(b) He "was subjected to double jeopardy in violation of the 5th Amendment to the Constitution of the United States through the imposition by the Trial Court of consecutive sentences on his convictions for two alleged offenses arising out of the same transaction."

(5) This Court affirmed the ruling of the Superior Court on the first issue by Order dated July 2, 1980 which was followed by an Opinion, *Bailey v. State*, Del.Supr., 422 A.2d 956 (1980). By the same Order, decision on the second issue was deferred pending supplemental briefing by counsel concerning the applicability to the issue of this Court's decision in *Hunter v. State*, Del. Supr., 420 A.2d 119 (1980). Decision was further deferred pending decision by this Court in *Evans v. State*, 420 A.2d 1186 (1980).

(6) In *Evans, supra*, we held that applying the rationale of *Hunter, supra*, cumulative sentences for manslaughter and a § 1447 weapons offense violated constitutional guaranties against multiple punishment and double jeopardy even though the underlying convictions may stand as separate and distinct offenses. The holding in *Evans, supra*, controls this case since the facts are indistinguishable.

(7) Under *Hunter, supra*, and *Evans, supra*, it was error for the Trial Court to impose separate sentences on both the manslaughter and the weapons offense convictions.

(8) The sentences imposed upon defendant as to both manslaughter and the related weapons offense are vacated. At resentencing the State shall have the election to proceed under either 11 *Del.C.* § 632 or 11 *Del.C.* § 1447, but not both.

(9) This Order is entered under the provisions of Rule 17(a) of this Court.

NOW, THEREFORE, IT IS ORDERED:

(1) That the Order of the Superior Court denying defendant's Rule 35(a) motion for postconviction relief is

AFFIRMED as to the first issue set forth under paragraph (4)(a) and REVERSED as to the second issue as set forth under paragraph (4)(b) above;

(2) That the sentences under defendant's convictions are VACATED; and the case is REMANDED for resentencing consistent herewith;

(3) That the Order of July 2, 1980 staying the issuance of the mandate under said Order is hereby

DISSOLVED.