Timothy L. MILLER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted Dec. 11, 1980.

Decided Feb. 20, 1981.

Richard E. Fairbanks, Jr. (argued), Asst. Public Defender, Wilmington, for defendant-appellant.

Timothy H. Barron (argued), Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

The following statement of facts is taken practically verbatim from the defendant's opening brief. For purposes of this appeal, the State in its answering brief accepted and adopted this statement.

The defendant, Timothy L. Miller, was charged with arson in the first degree and burglary in the second degree, concerning an alleged incident occurring at the building owned by James Dixon at 1202 West Fifth Street, Wilmington, on January 27, 1979.

The State called two witnesses, David N. Jones and Roger W. Stanford, to testify as to the events prior to the discovery of the fire at Mr. Dixon's house. Mr. Jones and Mr. Stanford testified that at about 3:30 p.m. on January 27, 1979, they were together on the porch of Mr. Stanford's house at 1200 West Fifth Street. Mr. Jones and Mr. Stanford testified that Timothy Miller, whom they know by sight and name, approached Mr. Dixon's house.

According to their testimony, the defendant went up on the front porch of Mr. Dixon's house, checked the mailbox, and attempted to get in through the front door. They testified that Mr. Miller could not get in the front door and that he then proceeded down the alley between the Dixon and the Stanford houses to the back yard of Mr. Dixon, opened the bathroom window, and climbed through it into Mr. Dixon's house.

Roger Stanford then stated that he went into his house. According to Mr. Jones, who remained on the porch, the defendant exited through the bathroom window about five minutes after he had entered and went down the alley to the back yard. Although Mr. Stanford testified he did not see anyone exit from the window, he and Mr. Jones testified they saw the defendant come out onto West Fifth Street from an alley further up the street a few minutes later. Mr. Jones testified that at about ten minutes after he last saw Mr. Miller, he saw smoke coming from Mr. Dixon's house. Mr. Stanford testified that after ten or fifteen minutes after he last saw the defendant, he saw smoke and that his father called the fire department.

The State also called James Dixon, the owner of the residence at 1202 West Fifth Street. He testified that the defendant was occupying the first floor apartment of the building until a couple of days before Christmas, 1978. According to his testimony, he evicted Mr. Miller because he had failed to pay the rent. Mr. Dixon also testified that the defendant did not have his permission to enter the premises on January 27, 1979.

The State called Lt. Edward Stepp, a fire investigator for the Wilmington Fire Marshal's office, to testify as to the origin and cause of the fire. Lt. Stepp testified that he conducted his investigation at Mr. Dixon's house on February 2, 1979. He testified that in his opinion, there had been two points of origin of the fire.

At the close of the State's case-in-chief at trial, defense counsel made a motion for a directed verdict of acquittal on each count. The Trial Court denied the motion, finding sufficient evidence tending to prove the elements of both counts.

The defense offered three witnesses, Everlean Miller, Timothy Miller and Joyce Martin, to testify that the defendant was at his mother's house at the time of the alleged arson and burglary. Mrs. Miller, the

defendant's mother testified that from about 2:15 p. m. until 4:00 p. m. on January 27, 1979, when somebody yelled, "Fire", the defendant was in her house.

The defendant offered similar testimony, in that, from about 1:15 p. m. until 4:00 p. m., he was in his mother's house with Mrs. Miller and Joyce Martin, his girl friend. Joyce Martin also testified that from 1:15 p. m. until about 4:00 p. m., the defendant never left Mrs. Miller's house.

John H. Goodyear, the State's rebuttal witness, also testified that he saw Mr. Miller at about 3:45 p. m. on January 27, 1979, coming out of his alley, a few houses up from Mr. Dixon's house. Mr. Goodyear testified that the defendant had urinated on the side of his house and that he had talked with Mr. Miller at that time.

The defense requested an instruction on the lesser charge of arson in the second degree, which the Trial Court denied. The jury returned verdicts of guilty as charged on both counts.

The defendant raises three points on appeal, one relating to the burglary conviction and two relating to the arson conviction.

■ The indictment charging burglary in the second degree alleged that the defendant "did knowingly enter and remain unlawfully in the dwelling" of James Dixon. The statute defining the crime, 11 *Del.C.* § 825, uses the phrase "knowingly enters or remains unlawfully". The Trial Court, finding the conjunctive in the indictment to be "either surplusage or . . . a typographical error" instructed on the elements in the disjunctive language of the statute.

It seems to us that the concept of remaining unlawfully in the dwelling is primarily designed for the case where a defendant has a license to enter but the license has terminated in some fashion. As the State argues, the whole concept is somewhat unnecessary when the evidence shows an unlawful entry because the remaining in the dwelling after such an entry is also unlawful, at least in the factual situation presented here. The intruder clearly had no license to either enter in the fashion he did

or to remain in the dwelling at all. The defendant concedes the evidence supports both unlawful entry and unlawful remaining.

It would have been better and more precise if the indictment had alleged only an unlawful entry. Given the indictment, however, it would have been better if the Trial Judge had charged in accordance with the indictment. But, coupled with the remainder of the charge on burglary, the disjunctive phraseology includes every element necessary to constitute the offense and, in light of the factual context wherein unlawful remaining necessarily follows from an unlawful entry, there has been no prejudice to any substantial right of the defendant. The error, if any, is clearly harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Superior Court Criminal Rule 52(a). This is not a case where the Trial Court added an additional element in substitution for one erroneously charged. Compare *Johnson v. State*, Del. Supr., 409 A.2d 1043 (1979).

■ The remaining two points raised by the defendant relate to the degree of arson involved. For the purposes of this case, the distinction between arson in the first degree, a class B felony, and arson in the second degree, a class C felony, depends on the aggravating element of whether the defendant knew "of circumstances which render[ed] the presence of another person not an accomplice [in the building] a reasonable possibility." 11 *Del.C.* § 803(2). The defendant claims that the State did not produce sufficient evidence to justify conviction of arson in the first degree or alternatively, that the Trial Judge erred by not charging on arson in the second degree.

The evidence showed that: the defendant knew of the apartment use of the building; the defendant had in fact been living in the first floor apartment until a week before Christmas, 1978; the second floor was rented by a family known to the defendant while the defendant lived in the building; and the second floor was in fact rented on the date of the fire. Such evidence was

sufficient in our judgment to submit to the jury the question of whether the defendant knew of circumstances rendering the presence of another person in the building a reasonable possibility. In short, it was proper to charge on arson in the first degree as was done.

 The second point on the arson charge is more difficult. The defense specifically requested a charge on arson in the second degree. The request was denied by the Trial Judge. Bearing in mind that legally the burden is on the State to prove each element of an offense beyond a reasonable doubt [*In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); 11 *Del.C.* § 301(b)] and that factually the defendant had not lived in the building for over a month, we find it would have been better after the defense request to submit a crucial factual element in the arson prosecution to the jury. We recognize that the thrust of the defense was that the defendant was elsewhere but that thrust cannot relieve the State of the burden of convincing the trier of fact of a necessary element of the more aggravated offense. If "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense", a trial judge should charge the jury on the lesser offense as well as the greater. 11 *Del.C.* § 206(c). See also Superior Court Criminal Rule 31(c). The question here is close but we think it was one for the jury.

This final point, however, only raises an issue as to the degree of guilt. If the judgment were reduced to the lesser offense, the defendant will receive the full benefit of the instructional error alleged. Since the defendant did not receive a sentence greater than the maximum available for the lesser class C felony and since the defendant is guilty of a felony in either event, it does not seem to us that either the defendant or the State will suffer any prejudice if this Court merely reduces the degree of the conviction without requiring a new trial. *Porter v. State*, Del.Supr., 243 A.2d 699, 702–03 (1968); *Dalton v. State*, Del.Supr., 252 A.2d 104, 105–06 (1969); *White v. State*, Del.Supr., 348 A.2d 688, 690–91 (1975).

The judgment is affirmed insofar as defendant's conviction of burglary in the second degree is concerned. With regard to the arson conviction, the judgment is reversed and the case remanded with instructions to enter a judgment of conviction of arson in the second degree and to resentence the defendant on such lesser offense.