**William A. FENSTERER,**
**Defendant-Appellant,**

v.

**STATE of Delaware, Plaintiff-Appellee.**

Supreme Court of Delaware.
Submitted: March 27, 1986.
Decided: May 8, 1986.
Rehearing Denied: June 9, 1986.

Harold Schmittinger (argued), Charles E. Whitehurst (argued), and William W. Pepper of Schmittinger & Rodriguez, P.A., Dover, for defendant-appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Division, (argued) and Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for plaintiff-appellee.

Before CHRISTIE, C.J., and McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

The defendant, William A. Fensterer, was convicted by a jury of murdering his fiancee, Stephanie Ann Swift. On appeal, this Court reversed the defendant's conviction, holding that he had been denied his Sixth Amendment right to confront the witnesses against him when a special agent of the Federal Bureau of Investigation was unable to state the basis of his opinion, admitted into evidence, that a hair on the alleged murder weapon had been forcibly removed from the victim's head. *See Fensterer v. State*, Del.Supr., 493 A.2d 959 (1985). The State petitioned for a writ of certiorari in the Supreme Court of the United States. In a *per curiam* opinion issued on November 4, 1985, the Supreme Court granted certiorari and reversed and remanded the case to this Court, finding no Sixth Amendment violation. *See Delaware v. Fensterer*, —— U.S. ——, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Having considered the parties' contentions in their supplemental briefing and at oral argument, we again reverse the defendant's conviction, but on different grounds.

I.

The facts of this case are set forth in detail in our previous opinion. *See Fensterer v. State*, 493 A.2d at 960–62. The defendant was tried on the charge of first degree murder, but the jury convicted him of murder in the second degree. At trial, the State sought to prove, based on circumstantial evidence, that the defendant had strangled Swift with a cat leash that belonged to the couple and that was found in their apartment after the murder. To establish that the cat leash was the murder weapon, the State attempted to prove that two hairs found on the leash were similar to Swift's hair, and that one of those hairs had been forcibly removed from the victim's head, impliedly during the strangula-

tion. To prove these theories, the State relied on the testimony of Special Agent Allen Robillard of the Federal Bureau of Investigation.

Agent Robillard testified at trial that one of the hairs found on the leash had been forcibly removed from Swift's head. He explained that there were three observations upon which such a determination could be made: (1) the presence of the follicular tag on the hair; (2) the presence of an elongated and misshaped root; and (3) the presence of a sheath of skin surrounding the root area. Agent Robillard testified, however, that he did not remember which of the three observations he had made in determining that the hair had been forcibly removed. *See id.* at 963.

The defendant objected to the admission of Robillard's testimony, arguing that he could not adequately cross-examine the agent if the agent could not testify as to which of the three observations he had relied on in forming his opinion. The Superior Court overruled the objection, stating that it went to the weight of the evidence and not to its admissibility.

The defense presented its own expert witness, Dr. Peter DeForest, who agreed with Agent Robillard that the hairs found on the leash were similar to those taken from the victim. DeForest testified that he had observed that one of the hairs did have a follicular tag adhering to the root, and that Robillard had told him prior to trial that he had based his conclusion of forcible removal on the presence of the follicular tag. DeForest then challenged Robillard's theory that the presence of a follicular tag indicates forcible removal, stating that no documentation or studies supported such a theory.

On appeal, this Court reversed the defendant's conviction, holding that Agent Robillard's testimony was inadmissible under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Noting that "[t]he primary interest secured by the Clause is the right of cross-examination," we found that effective

cross-examination of Robillard "at a minimum required that he commit himself to the basis of his opinion." *Fensterer v. State*, 493 A.2d at 963–64 (footnote omitted). We reasoned that "[w]ithout an acknowledgment of the basis of his opinion, defense counsel's cross-examination of the Agent was nothing more than an exercise in futility," and that had Robillard committed himself to the specific observation upon which his conclusion was based, he might have been completely discredited. *Id.* at 964.

The Supreme Court of the United States reversed this Court's decision, finding that the Superior Court "did not limit the scope or nature of defense counsel's cross-examination [of Robillard] in any way," and that therefore the admission of his testimony did not violate the Confrontation Clause despite his inability to state the basis of his opinion. *Delaware v. Fensterer*, 106 S.Ct. at 294, 296. The Court stated: "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 295 (emphasis in original). The Court found that the defendant had been given such an opportunity. It noted that defense counsel's cross-examination of Agent Robillard demonstrated to the jury that Robillard could not remember the observation upon which his opinion was based, thus inviting the jury "to find that his opinion is as unreliable as his memory." *Id.* at 294. In addition, the Court noted that the defense had revealed to the jury through its own expert witness the observation upon which Robillard had relied and had refuted his corresponding theory. The Confrontation Clause, said the Court, requires no more. *Id.* at 295.

II.

On remand to this Court, the defendant argues that although the Supreme Court of the United States found Agent Robillard's testimony to be admissible under the Confrontation Clause, such testimony was

nevertheless inadmissible under Rule 705 of the Delaware Uniform Rules of Evidence.[1] The defendant contends that, in violation of Rule 705, Robillard did not establish the proper factual basis for his opinion that one of the hairs found on the leash had been forcibly removed. The State contends that Agent Robillard satisfied D.R.E. 705 by testifying with firsthand knowledge of the facts gained from a personal examination of the hairs in question. Robillard's inability to recall the specific observation he made, argues the State, went to the weight of the evidence and not to its admissibility. Finally, the State contends that the defendant has failed to show that a substantial right was affected by the admission of Robillard's testimony, as required by D.R.E. 103(a).[2]

■ D.R.E. 705 requires that in order to testify as to an opinion, an expert must first identify the facts and data upon which he bases the opinion and his reasons for it.[3] Establishing such a sufficient basis for an expert opinion, then, is a prerequisite to the opinion's admission into evidence. *See also Eaton v. State,* Del.Supr., 394 A.2d 217, 219 (1978) (an expert witness is generally expected to state the entire basis for his opinion); *Bates v. State,* Del.Supr., 386 A.2d 1139, 1144 (1978) (an expert must state the facts underlying his conclusion).

■ We find that the State failed to meet its burden under D.R.E. 705 to present evidence establishing the basis of Agent Robillard's opinion. Rule 705 assures that an expert will establish to the satisfaction of the trial judge why he holds a certain opinion and how he came to acquire it before the opinion will be admitted into evidence. Agent Robillard, however, was unable to state which of three observations he had made in determining that one of the victim's head hairs had been forcibly removed. Thus, because he did not identify the facts and data upon which he based his opinion and did not identify the reasons for his opinion before expressing it to the jury, his testimony was inadmissible under D.R.E. 705.

■ Agent Robillard's inability to recall which specific observation he had made goes not to the weight to be accorded his testimony, as the lower court found and as the State now argues, but to its admissibility. While a witness's mere lack of memory as to a particular fact may go only to the

---

1. The defendant raised this argument when he was initially before this Court. However, because we reversed his conviction on Confrontation Clause grounds, we did not address it. *See Fensterer v. State,* 493 A.2d at 962 n. 3.

   In addition, the defendant argues again that Agent Robillard's testimony was inadmissible under *Frye v. United States,* D.C.Cir., 293 F. 1013 (1923), because the State failed to establish the general scientific acceptance of the theory of forcible removal of hair upon which Robillard relied. As we noted in our first opinion in this case, we rejected the *Frye* test as an independent controlling standard of admissibility of scientific evidence in *Whalen v. State,* Del.Supr., 434 A.2d 1346, 1354–55 (1980), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982). *See Fensterer v. State,* 493 A.2d at 962 n. 3.

2. D.R.E. 103(a) provides:

   (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
   (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
   (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

3. D.R.E. 705 provides:

   (a) Disclosure of Facts or Data Underlying Expert Opinion. The expert may testify in terms of opinion or inference, provided he first identifies the facts and data upon which he bases his opinion and his reasons for the opinion, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.
   (b) Objection. An adverse party may object to the testimony of an expert on the ground that he does not have a sufficient basis for expressing an opinion. He may, before the witness gives his opinion, be allowed to conduct a voir dire examination directed to the underlying facts or data on which the opinion is based.

weight of that evidence, an expert witness's inability to establish a sufficient basis for his opinion clearly renders the opinion inadmissible under D.R.E. 705. In order to establish a sufficient basis for his opinion, Robillard would have had to commit himself to one of the three possible observations.

■ The State argues that the defendant has not been prejudiced, i.e., no substantial right has been affected, by the trial court's admission of the agent's testimony, and that therefore, under D.R.E. 103(a), the defendant's conviction must stand. D.R.E. 103(a) provides that error may not be predicated upon a ruling admitting evidence unless a substantial right of the party is affected.[4] In support of this argument, the State notes that Dr. DeForest, who testified for the defense, knew which observation Agent Robillard had made in forming his opinion and refuted the premise upon which the opinion was based, namely that the presence of a follicular tag indicates forcible removal. Dr. DeForest's testimony, argues the State, gave the jury all the information it needed to evaluate Robillard's opinion. The State concludes that as a result, the defendant was not prejudiced. We disagree.

As we noted in ouroriginal opinion in this case, the existence of Dr. DeForest's testimony is not the equivalent of Agent Robillard acknowledging the observation upon which he relied. *Fensterer v. State*, 493 A.2d at 964 n. 5. We can discern no substitute for the effective cross-examination of Agent Robillard made possible only by his identifying both the specific observation he had made in reaching his conclusion and the theory upon which that conclusion was based. In the absence of such testimony, the defendant was denied his substantial right to cross-examine the agent as to the basis for his opinion.

The State attempts to lend further support to its position that no substantial right of the defendant was affected by noting

the United States Supreme Court's statement that "an expert witness who cannot recall the basis for his opinion invites the jury to find that his opinion is as unreliable as his memory." *Delaware v. Fensterer*, 106 S.Ct. at 294. This statement, however, was made in the context of the Supreme Court's discussion of the defendant's rights under the Confrontation Clause, and those rights are no longer an issue in this case. Moreover, the fact remains that an opinion of a special agent of the Federal Bureau of Investigation normally appears quite credible to a jury, despite the agent's faulty memory. *See Fensterer v. State*, 493 A.2d at 964. Without the ability to fully cross-examine Robillard about his opinion, the defendant was clearly prejudiced.

■ Finally, the State contends that the trial judge properly exercised his discretion in admitting Agent Robillard's testimony because the defense told the judge during Robillard's voir dire examination that it would offer the testimony of counter-experts who would refute Robillard's opinion. Because the jury would have the benefit of opposing testimony and would be able to assess the reliability of both experts and weigh the merits of their testimony, argues the State, the trial judge properly exercised his discretion in admitting Robillard's testimony and no substantial right of the defendant was affected.

However, D.R.E. 705, which governs the trial judge's decision whether or not to admit expert opinion testimony, requires that a sufficient basis for the opinion first be established before the opinion may be admitted. Consequently, the judge's admission decision may not be based on the assurance by counsel of opposing testimony later in the trial. Such an assurance fails to establish the facts underlying the expert's opinion and his reasons for it, as required by Rule 705. It also fails to remove the prejudice suffered by the defendant.

---

**4.** *See supra* note 2.

In conclusion, then, we find that under D.R.E. 705 and D.R.E. 103(a), the trial court abused its discretion in admitting the opinion testimony of Agent Robillard. We must therefore reverse the defendant's conviction and remand the case for a new trial.

### III.

■ In addition to raising his evidentiary claim, the defendant reargues his contention that he was denied his Sixth Amendment right to a speedy trial. This Court addressed that issue in its original opinion and concluded that the defendant's right to a speedy trial was not abridged. *Fensterer v. State*, 493 A.2d at 964–67. We based our decision on the reasons for the delay of trial and the absence of demonstrable and appreciable prejudice, two factors to be considered in the applicable balancing test established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See Stacey v. State*, Del.Supr., 364 A.2d 819 (1976). We reasoned that the prejudice suffered by the defendant resulting from Agent Robillard's testimony was caused by the error of the trial court in admitting that testimony. We stated: "If his testimony had been properly excluded, Fensterer would not have been prejudiced." 493 A.2d at 966.

The defendant now contends that because the United States Supreme Court held Agent Robillard's testimony to be admissible, the prejudice the defendant suffered has been resurrected. Specifically, the defendant claims that Robillard's inability to recall the basis of his opinion can only be attributed to the delay in bringing the case to trial.

Robillard's testimony has again been ruled inadmissible and so we continue to detect no prejudice to the defendant from the delay in his trial. Moreover, the delay was as much attributable to the defendant as it was to the State. Consequently, the defendant has failed to prove a violation of his right to a speedy trial under the balancing test established in *Barker v. Wingo*.

### IV.

■ The defendant's final contention focuses upon a statement made by the prosecutor during his closing argument. While discussing the testimony of one of the investigating police officers, the prosecutor stated: "To believe the defendant and disbelieve the State, you would have to believe that [the two police officers] committed perjury in this case. And I would assert to you they have not." The defendant objected to the statement at trial on the grounds that the State was vouching for the veracity of its own witnesses. Through briefing and oral argument in this Court, the defendant confined his ground for reversal to the State's injection of its personal belief as to the truth or falsity of its witnesses' testimony.

In a subsequent written correspondence, the defendant raises a new ground for a reversal based upon the allegedly improper prosecutorial argument. He contends that the objected-to statement by the prosecutor distorted the government's burden of proof "by implying that the jury must make a finding of governmental misconduct in order to acquit." The jury's role in a criminal case, argues the defendant, is to decide whether the government has proven its case beyond a reasonable doubt, not to decide whether it believes the government's or the defendant's version of the facts. The defendant cites *United States v. Vargas*, 7th Cir., 583 F.2d 380, 387 (1978), for the proposition that it is reversible error for a prosecutor to argue that in order to acquit the defendant, the jury must find that the government witnesses committed perjury.

The State objects to the defendant's new argument because it was not raised at trial and was not previously brought to the attention of this Court. The State argues on the merits that the prosecutor's statement was merely an effort to compare and contrast the opposing testimony of State and defense witnesses, and that it was the jury's role to resolve the conflict.

We find that the defendant's new rationale has been briefed fully enough by the parties' recent exchange of memoranda to be fairly before us. Moreover, the rationale is closely related to matters already properly before this Court. Finally, this issue regarding the prosecutor's statement is not determinative of this case's outcome.

In light of the defendant's story that he was not involved in Stephanie Swift's murder, the prosecutor's statement implies that in order to acquit the defendant (or "believe the defendant and disbelieve the State"), the jury would have to find that the officers had lied under oath. Such an argument is both flawed and improper. There need be no perjury by the State's witnesses to acquit the defendant. Even if the jury believed the State's witnesses, it could still acquit the defendant if the evidence before it was insufficient to find the defendant guilty beyond a reasonable doubt. Or the jury could have serious doubts about the credibility of both sides; in that case, the State would have failed to satisfy the "beyond a reasonable doubt" standard. The jury is not required to choose between the State's and the defendant's version of the facts. The defendant, then, had no affirmative burden to disprove the testimony of the police officers, as the prosecutor's statement implies.

While this most recent argument by the defendant is not determinative of this case because of our reversal on evidentiary grounds, we nevertheless find that the prosecutor's conduct was improper and unacceptable. The State should refrain from similar prosecutorial remarks in the future.

\* \* \*

REVERSED and REMANDED for a new trial.