Joseph A.C. WEBB, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 46, 1994.

Supreme Court of Delaware.

Submitted: June 13, 1995.
Decided: July 12, 1995.
Rehearing Denied Aug. 16, 1995.

Bernard J. O'Donnell, Asst. Public Defender, Wilmington, for appellant.

Rosemary K. Killian, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal, we consider the contentions of defendant below-appellant, Joseph A.C. Webb ("Webb"), that the Superior Court erred by: (i) improperly limiting access to his counsel, in an order overbroad under the circumstances, during an overnight recess while the defendant was on cross-examination as a witness in his own defense; (ii) denying admission of impeachment evidence of a criminal conviction of a State witness during defense counsel's cross-examination of that witness; (iii) overruling objections to admission of purported hearsay evidence; (iv) refusing to instruct the jury on a lesser included offense; and (v) overruling an objection to the prosecutor's alleged improper remarks during closing argument.

We hold that the Superior Court committed reversible error by restricting Webb's access to his counsel in violation of the Sixth Amendment right of the defendant under the United States Constitution to have the effective assistance of counsel. We also hold that the trial court improperly excluded the proffered impeachment evidence of the criminal conviction in the defendant's cross-examination of the State's witness in violation of Delaware Rule of Evidence ("D.R.E.") 609(a)(2). In all other respects, we find that the Superior Court committed no error. Accordingly, we reverse and remand for a new trial.

## I. FACTS

Webb was accused of raping the daughter (the "victim") of his girlfriend (the "mother") from 1981, when the victim was seven years old, repeatedly until October 1985, when the victim was eleven years. In October 1985, Riverside Hospital diagnosed the victim as having trichomoniasis and genital herpes, both sexually transmitted diseases. The hospital likewise diagnosed the victim's mother with trichomoniasis. During questioning by medical personnel, the victim related that Webb had been engaging in sexual acts with her for several years.

In March 1986, Webb was arrested and charged with two counts of first degree rape.[1] In June 1987, a Superior Court jury found Webb guilty of one count of first degree rape and not guilty of the other. The trial judge sentenced him to life imprisonment. Webb moved for post-conviction relief, claiming ineffective assistance of counsel. The Superior Court granted Webb's post-conviction motion and vacated his conviction.

In November 1993, Webb was retried before another jury in the Superior Court. The State presented the testimony of several witnesses, including the victim. The victim testified that Webb began to touch her in a sexual way in the beginning, and as time passed, this activity increased in both frequency and intensity. During the last two years of the attacks, Webb engaged in full sexual intercourse with the victim several times each week. Most often these attacks occurred during the evening hours while the mother worked two jobs and he was alone in the house with the victim and her brother. The victim testified that Webb would take her into the mother's bedroom or her own bedroom and rape her. When Webb would finish, he would warn the victim not to tell anyone or he would "get mad" at her. The State also offered a medical examination document promulgated by the Porter Center which indicated that Webb too had trichomoniasis.

Webb took the stand in his own defense. His testimony reflected a blanket denial of the victim's claims. He informed the jury that he had never touched the victim in any improper or sexual manner. After deliberating for two days, the jury was deadlocked. The Superior Court gave an *Allen* charge.[2] Soon thereafter, the jury returned a guilty verdict on the first degree rape charge. The judge sentenced Webb to 25 years incarceration. This is Webb's direct appeal of his conviction.

## II. DENIAL OF THE EFFECTIVE ASSISTANCE OF COUNSEL

At the conclusion of Webb's direct testimony, the trial judge ordered an overnight recess. Webb's cross-examination was scheduled for the next day. After the jury was dismissed for the day, the following colloquy took place (emphasis supplied):

[THE PROSECUTOR]:

> Could the witness [Webb] be instructed by the Court not to discuss his testimony with anyone and be advised he is on cross-examination **and that also limits his access to his attorney?**

THE COURT:

> Very well.
>
> You understand that you are not to discuss your testimony with anyone. You are still subject to your oath, and the cross-examination will start tomorrow.

THE DEFENDANT:

> Yes.

[THE PROSECUTOR]:

> **As I understand the case law, the access to his attorney is somewhat limited, too, because he is on cross.**

[DEFENSE COUNSEL]:

> I have got a problem with that because it's—it's not just a black letter rule. I always try to be very careful about not taking unfair advantage of situations. Recent testimony is one of them, in trying to suggest some type of change, or

---

1. 11 *Del.C.* § 764, *revised by* 65 *Del.Laws* c. 494 (eff. July 9, 1986). The conduct serving as a basis for Webb's conviction occurred before the effective date of the 1986 revision and, thus, the old statutory scheme applies in this case.

2. *See Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

456

whatever. But if there are other matters concerning trial strategy or questions which come up from the defendant, I think the defendant has a right to be able to ask his attorney certain questions. It just shouldn't be a closure because of that relationship. He—

THE COURT:

**Well, certainly, I think the defense attorney understands his ethical obligations. The Court expects him to understand the difference between what he can and what he cannot talk to the defendant about.**

[DEFENSE COUNSEL]:

Thank you.

[THE PROSECUTOR]:

**I think, perhaps, I'm also directing it at the defendant to understand he doesn't have the same degree of access that he had to question his attorney and prepare responses.**

THE COURT:

The defendant is to understand he is not to discuss his testimony this morning with his attorney.

**I trust the defense attorney will, if he should attempt to, indicate the ethical restrictions that are placed upon him. Other than that, I'll leave it at that.**

(Emphasis added). Later that same day, the following exchange occurred:

[DEFENSE COUNSEL]:

If we could, concerning the ruling, I realize Your Honor made the ruling about contact with my client. I still have a problem with that. I will check on the case. I'll abide by the ruling, but just as an illustration I thought of, I can't—I can't tell the guy, under the rule, don't say that tomorrow on cross-examination.

THE COURT:

I think that's appropriate. You would not have a chance, but for the fact there is a recess at this point, to do that. She [the prosecutor] would have immediately went into cross.

[THE PROSECUTOR]:

That is exactly what I'm talking about.

Based on the above, Webb argues that the Superior Court's order was overbroad, thus violating his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution (the "Sixth Amendment").[3] The State characterizes the Superior Court's order as restricting only defense counsel's ability to render advice regarding Webb's ongoing testimony, a limitation which the State contends is constitutionally sanctioned. The trial judge's instruction was not clearly limited to discussions of defendant's testimony, however. Because of the pressure from the prosecutor for an instruction limiting defendant's "access" to his lawyer and the trial judge's vague reference to the lawyer's ethical responsibilities in response to that pressure, the ruling became imprecise and unconstitutionally overbroad.

The seminal case with which we begin analysis of Webb's claim is *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In that case, the United States Supreme Court addressed the issue of whether a blanket prohibition of lawyer-defendant contact during an overnight (seventeen-hour) recess violated a defendant's Sixth Amendment right to counsel. *Geders,* 425 U.S. at 82, 96 S.Ct. at 1332. In determining that this type of broad prohibition impinged on the defendant's rights, the Court stated:

[A] sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial. A nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial. Moreover, "the rule" [*i.e.,* that allows sequestration of witnesses] accomplishes less when it is applied to the defendant rather than a nonparty witness, because the defendant as a matter of right can be and usually is present for all testimony and has the opportu-

**3.** U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to ...

have the Assistance of Counsel for his defense.").

nity to discuss his testimony with his attorney up to the time he takes the witness stand.

*Id.* at 88, 96 S.Ct. at 1335. The Court recognized that "[i]t is common practice during such recesses for an accused and counsel to discuss the events of the day's trial." *Id.* These discussions often include considerations such as trial strategy, tactical decisions, testimony of other witnesses, and the possibility of a plea bargain. *Id.*

Thirteen years later, the United States Supreme Court revisited the issue of whether a testifying defendant and his or her counsel may discuss non-testimonial matters during a trial recess. *Perry v. Leeke*, 488 U.S. 272, 284, 109 S.Ct. 594, 602, 102 L.Ed.2d 624 (1989). *Perry* involved a trial judge's absolute ban on consultation between a testifying defendant and his lawyer during a fifteen-minute recess. 488 U.S. at 274, 109 S.Ct. at 596. On appeal, the Court affirmed the ban, reasoning:

> [W]hen a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice.
>
> The reason for the rule is one that applies to all witnesses—not just defendants. It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed.[ ] Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections.[ ] The defendant's constitutional right to confront the witnesses against him immunizes him from such physical sequestration.[ ] Nevertheless, when he assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well.

Accordingly, it is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the defendant or a nondefendant, that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer.

> \*    \*    \*    \*    \*    \*

> [P]ermitting a witness, including a criminal defendant, to consult with counsel after direct examination but before cross-examination grants the witness an opportunity to regroup and regain a poise and sense of strategy that the unaided witness would not possess. This is true even if we assume no deceit on the part of the witness; it is simply an empirical predicate of our system of adversary rather than inquisitorial justice that cross-examination of a witness who is uncounseled between direct examination and cross-examination is more likely to lead to the discovery of truth than is cross-examination of a witness who is given time to pause and consult with his attorney....

*Id.* at 281–82, 109 S.Ct. at 600–01 (footnotes omitted). The Court's holding was limited: "[I]n a short recess[,] in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice." *Id.* The *Perry* court distinguished *Geders* on the basis of time: *Geders* involved an overnight (seventeen-hour) recess; *Perry* involved a fifteen-minute break. As to discussion of non-testimonial matters, however, the *Perry* court affirmed the holding in *Geders:*

> [I]t is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial related matters that is controlling in the context of a long recess. *See Geders v. United States*, 425 U.S. at 88, 96 S.Ct. [at] 1335. The fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise that basic right.

*Id.* at 284, 109 S.Ct. at 602. Although *Perry* and *Geders* establish the parameters for our analysis, neither addressed the factual sce-

nario in the instant case—namely, a limitation on contact short of an absolute ban but for a period of time longer than a few minutes.

This Court addressed that factual scenario in *Bailey v. State,* Del.Supr., 422 A.2d 956 (1980). In that case, the trial judge imposed a testimonial limitation on a defendant during an overnight trial recess. *Id.* at 958. In a postconviction proceeding, the defendant argued, *inter alia,* that the following order violated the Sixth Amendment: " 'Mr. Bailey, during the evening recess, I caution you and instruct you that you are not to discuss your testimony with anybody until you have completed your testimony in this case....' " *Id.* (quoting trial court's oral order). Construing the "anybody" as referring to defense counsel, we stated: "The instruction was precisely and simply stated." [4] *Id.* at 959.

Distinguishing *Geders* on the basis that the limitation in that case was an absolute ban on lawyer-defendant contact, *id.* at 959, we continued: "In our view, a testimonial limitation does not constitute a *per se* Sixth Amendment infringement of a defendant's right of access to counsel[,]" *id.* at 960. We found that because "a testimonial limitation may not be distinguishable from a blanket sequestration in the sense that each may impinge in varying degrees on access to counsel," *id.,* abstract propositions should be discounted, and a decision rests on evaluation of the record in the trial court for prejudice resulting from the imposed limitation concerning the defendant's ongoing testimony, *id.* at 960–61, 963–64. In *Bailey,* unlike the instant case, the defendant was incarcerated and made no showing that he sought to confer with his attorney.

▇▇▇ Explicit in *Perry,* 488 U.S. at 281–82, 109 S.Ct. at 600–01, and implicit in both *Geders, see* 425 U.S. at 88, 96 S.Ct. at 1335, and *Bailey, see* 422 A.2d at 959–60, is a recognition that the criminal defendant who decides to become a witness in his or her own defense assumes two separate but concurrent roles—that of a "defendant" and that of a "defendant-witness." The first role requires

that the defendant not be forced to sacrifice unfairly the appurtenant constitutional guarantees accorded to an accused. Among these constitutional guarantees is the right of a defendant in a criminal case to consult with counsel at any time during the proceedings. *See, e.g., Geders,* 425 U.S. at 91, 96 S.Ct. at 1336. Thus, a defendant-witness may not be denied access to his or her counsel or restricted from discussing any subject with counsel during an overnight recess except that, in most circumstances, a narrowly tailored limitation on discussion of the defendant's testimony with counsel may be imposed during a brief recess while the defendant is on cross-examination. During such a recess, the defendant may discuss with counsel matters relating to the availability of other witnesses, the progression of the trial, the day's events, legal issues, strategic considerations such as whether to offer or accept a plea bargain, and other matters. *See Perry,* 488 U.S. at 284, 109 S.Ct. at 602; *Geders,* 425 U.S. at 88, 96 S.Ct. at 1335; *Bailey,* 422 A.2d at 959–60. As noted in *Geders,* where the instruction against discussion with counsel during an overnight (seventeen hour) recess was overbroad ("about anything"), the court noted the tension between the Sixth Amendment right to access and the prevention of improper coaching:

> To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel. *Brooks v. Tennessee,* 406 U.S. 605, 32 L.Ed.2d 358, 92 S.Ct. 1891 (1972).

*Geders,* 425 U.S. at 91, 96 S.Ct. at 1337.

▇▇▇ In the instant case, where Webb had finished his direct testimony but had yet to be cross-examined, we are required to review the limitation imposed by the trial court on communications between Webb and his coun-

---

4. Nonetheless, in affirming the trial court's ruling rejecting the Sixth Amendment claim, we noted, however, that our decision was not based

"[o]n the limiting nature of the instruction given." 422 A.2d at 959 n. 7.

sel during the overnight trial recess. *See Bailey,* 422 A.2d at 960 (requiring case-by-case analysis). Standing alone, the Superior Court's initial admonition to Webb that he was "not to discuss [his] testimony with anyone" because he was "[s]till subject to [his] oath[ ] and the cross-examination will start tomorrow" would have been proper as within the trial court's discretion. *See Perry,* 488 U.S. at 285 n. 8, 109 S.Ct. at 602 n. 8 (noting that "[a] judge may permit consultation between counsel and defendant during [a trial] recess, but forbid discussion of ongoing testimony[ ]"); *Geders,* 425 U.S. at 88, 96 S.Ct. at 1335; *Bailey,* 422 A.2d at 959 (noting that a similar instruction was "[p]recisely and simply stated"). But that is not the case before us for review because of what followed that initial admonition.

The trial court, at the behest of the State, committed error when it elaborated imprecisely on the testimonial limitation. The prosecutor had sought and received an instruction that the defendant not discuss his testimony with counsel. Not satisfied with that, the prosecutor pressed: "[t]he access to [Webb's] attorney is somewhat limited, too, because he is on cross."[5] After defense

counsel objected to this proposed broader denial of access, the trial court ambiguously responded: "Well, certainly, I think the defense attorney understands his ethical obligations. The Court expects him to understand the difference between what he can and cannot talk to the defendant about."[6] Anything short of an unequivocal denial by the trial court of the State's request to limit further Webb's "access" to counsel was erroneous. The court's response to the State's request could have been construed as an admonition that Webb and his counsel were prohibited from discussing not only Webb's ongoing testimony, but also other trial-related matters. Thus, the restriction was overbroad and violative of Webb's Sixth Amendment right to effective assistance of counsel.

■ It is vital in the search for truth that cross-examination should be a cornerstone of the adversary system. It is antithetical to the process of truth-seeking that any witness be permitted to consult with counsel during cross-examination to be "coached" on what to say, or not say, or how-to-say-it, or how to control or "put a better face on" testimonial damage already done.[7] This rule normally

---

5. The State in fact persisted in attempting to restrict Webb's access: "I think, perhaps, I'm also directing it at the defendant to understand he doesn't have the same degree of access that he had to question his attorney and prepare responses." The imprecise and overbroad portions of the limitation are more fully emphasized *supra* in the quotations from the trial court record. During oral argument, the State argued that the other "access" to which it was referring still related to discussions regarding Webb's ongoing testimony. We find this reconstruction implausible, given that the trial court had already imposed an unequivocal testimonial limitation before the State's additional requests.

6. The prosecutor further pressed after this exchange, noting that the defendant should "understand he doesn't have the same degree of access that he had to question his attorney and prepare responses." The court then instructed defendant again not to discuss his testimony with counsel, but the court regrettably reintroduced the earlier ambiguity by adding: "I trust the defense attorney will, if he should attempt to, indicate the ethical restrictions that are placed upon him. Other than that, I'll leave it at that." The further colloquy following this exchange correctly made it clear that the fortuitous recess did not permit counsel to "tell the guy … don't say that tomor-

row on cross-examination," but unfortunately, the ambiguity relating generally to "access" to counsel was not dispelled and remained in the record. Thus, the exchange as a whole was ambiguous and the limitation on access to counsel was overbroad.

7. This policy, which has historically been a firm Delaware policy, has recently been strengthened in the deposition context in civil litigation by making it unmistakably clear that there should be no on-the-record or off-the-record consultation concerning testimony between witness and counsel, even during recesses up to five days in duration. *See* Super.Ct.Civ.R. and Ch.Ct.R. 30(d)(1):

(1) From the commencement until the conclusion of a deposition, including any recesses or continuances thereof of less than five calendar days, the attorney(s) for the deponent shall not: (A) consult or confer with the deponent regarding the substance of the testimony already given or anticipated to be given except for the purpose of conferring on whether to assert a privilege against testifying or on how to comply with a court order, or (B) suggest to the deponent the manner in which any question should be answered. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

applies to a defendant in a criminal case during a short recess when the defendant elects to take the stand in his or her own defense and thereby becomes a witness. The fortuitous intervention of an overnight recess during the cross-examination of a defendant should not be an occasion for coaching which could not otherwise occur.

The subject of limiting a defendant's access to his counsel is dangerous and problematic. It is an area where precision is clearly called for in order that Sixth Amendment rights not be violated. If it is unavoidable that an evening recess interrupt the defendant's cross-examination,[8] trial judges should be especially vigilant in giving unmistakably clear and limited instructions that the defendant-witness may not discuss his or her testimony with counsel, but that instruction should not permit any inference that the defendant and counsel may not discuss other matters. *See Geders,* 425 U.S. at 91, 96 S.Ct. at 1336.

It is the nature of the judicial process that we decide only the case before us. *Paramount Communications, Inc. v. QVC Network, Inc.,* Del.Supr., 637 A.2d 34, 51 (1993). Accordingly, we cannot and do not prescribe a "one size fits all" rule to be applied in future criminal cases involving limitations on discussions between a defendant-witness and counsel during trial recesses of varying lengths. Our holding here is narrowly circumscribed to the facts of this case.[9] For example, we express no opinion on the breadth of a recent ruling of the United States Court of Appeals for the Fourth Circuit that, when a **weekend** recess is involved, the trial judge may not circumscribe the defendant-witness' contact with his lawyer even if the instruction is confined to the defendant's testimony. *United States v. Cobb,* 4th Cir., 905 F.2d 784, 792 (1990) (holding that such a limitation violates the right to effective assistance of counsel on the ground that it "[e]ffectively eviscerates [the defendant's] ability to discuss and plan trial strategy[ ]"), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991). Such a case is not before us and may not come before us, particularly if trial judges will, when feasible, manage the scheduling of trial testimony so that long recesses are avoided. *See supra* note 8.

The remaining issue in analyzing Webb's Sixth Amendment claim is whether the trial court's error was harmless. *See Bailey,* 422 A.2d at 963 (holding that such claims are subject to harmless error analysis). Where defense counsel objects to the limitation order at trial, the *Geders* court implied that actual prejudice need not be demonstrated. *See* 425 U.S. at 82, 96 S.Ct. at 1332; *Bailey,* 422 A.2d at 963 (interpreting *Geders* ). This case is unlike *Bailey* where we found that the defendant's claim of prejudice was suspect, given the fact that he did not object to the testimonial limitation until nearly three years after trial, *id.* at 964. In the instant case, Webb objected contemporaneously at trial to the limitation order and diligently attempted to have the trial judge narrow or withdraw the order. The resulting instruction was ambiguous, leaving the defendant and his counsel in a sea of uncertainty regarding the propriety of any communication. Under such circumstances, we can-

---

on evidence directed by the Court, or to present a motion under paragraph (d)(3).
*See also Paramount Communications, Inc. v. QVC Network, Inc.,* Del.Supr., 637 A.2d 34, 51 (1993) (Addendum).

8. Trial judges should consider managing the scheduling of testimony so as to avoid, if feasible, such interruptions of the testimony of a defendant-witness, perhaps even if extending the cross-examination into an evening may be required.

9. There can be no hard and fast rule governing every contingency. Coaching during a recess to shape the testimony of a defendant-witness when cross-examination is resumed is clearly improper and defense counsel should know that ethical violations are involved. There may be circumstances where it is not clear to defense counsel how to handle a problem which arises surprisingly during cross. Perjury is one example. *See Shockley v. State,* Del.Supr., 565 A.2d 1373, 1378 (1989) ("Under the Model Rules, adopted in Delaware in 1985, a lawyer's first duty when he learns his client is going to commit perjury is to seek to persuade the client not to do so. If the client has already presented the testimony, the attorney must rectify any damage.") In such a case defense counsel has an ethical obligation which may require a forthright application to the court for a special ruling permitting limited consultation.

not say that the error was harmless beyond a reasonable doubt.

## III. EXCLUSION OF IMPEACHMENT EVIDENCE

As part of its case-in-chief, the State presented the testimony of a young friend of the victim. The witness testified that the victim confided in her regarding Webb's sexual overtures. This testimony was consistent with the testimony of the witness during Webb's first trial.

■ In the period between Webb's two trials, the witness had been convicted in the Superior Court of the misdemeanor of shoplifting. Webb's counsel attempted on cross-examination to impeach her with this conviction. The State objected, arguing that Webb had failed to lay a foundation—namely, that he had not proffered proof of a judgment of conviction. The Superior Court sustained the objection in the "interest of justice" based on three reasons: First, Webb had failed to lay a foundation; second, the conviction occurred after the event about which the witness was testifying; and third, per the State's assurance, the testimony of the witness was entirely consistent with that provided in the first trial.[10]

■ The Superior Court abused its discretion in excluding the impeachment evidence proffered by Webb. D.R.E. 609 states:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence out-

weighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of punishment.

D.R.E. 609(a). In *Gregory v. State*, Del. Supr., 616 A.2d 1198 (1992), we defined a crime involving "dishonesty or false statement" as including, *inter alia*, crimes involving dishonest conduct or stealing, 616 A.2d at 1204. Where the conviction in question falls within the definition of D.R.E. 609(a)(2), the inquiry ends: the conviction is admissible against the testifying witness for purposes of impeachment. D.R.E. 609(a)(2); *Gregory*, 616 A.2d at 1204.

In the instant case, the witness had been convicted of the misdemeanor of shoplifting. In the Superior Court, the State obliquely conceded that this conviction was for a crime involving dishonesty. Thus, the Superior Court erred in undertaking the D.R.E. 609(a)(1) balancing test. That is, because the misdemeanor of shoplifting is a crime involving dishonesty, admission of the conviction for impeachment purposes was mandatory.[11] *See Gregory*, 616 A.2d at 1204.

■ The trial court's error with regard to this ruling cannot be found to be harmless in view of the importance of the testimony of this witness (and thus her credibility). In this case, witness credibility was crucial. The jury was faced with two versions of the facts: the victim's account (involving extensive sexual contact between herself and Webb) and Webb's rendition (involving no such contact). The State's witness corroborated the victim's story. Under these circumstances, Webb was prejudiced by the trial court's ruling eliminating his opportunity to attempt to cast doubt on the testimony of the witness through use of the impeachment evidence.

---

**10.** After Webb completed his testimony, the State offered to have a certified copy of the witness' conviction entered into the record, accompanied by a standard credibility charge read to the jury. Webb rejected the State's offer, arguing that (i) he was initially entitled to have the State produce the certificate of conviction under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (ii) the tardy introduction of the impeachment evidence did not cure the error of exclusion.

**11.** The Court need not decide the exact nature of the foundation that Webb should have established before seeking introduction of the impeachment evidence. The State is not in a position to insist that Webb should have produced a certificate of conviction since the State appears to have conceded (albeit belatedly) in the trial court that it might have had a duty to disclose to Webb the certificate under Superior Court Criminal Procedure Rule 16(a)(1)(C) & (c). *See Lilly v. State*, Del.Supr., 649 A.2d 1055, 1059 (1994).

## IV. OVERRULING OF HEARSAY OBJECTIONS

Webb claims that the Superior Court erred in admitting over objection evidence relating to the mother's suffering from trichomoniasis, as testified to at trial by the mother and Detective Edward Hazewski ("Hazewski"). Although admitted without objection, Webb also challenges Hazewski's testimony that Webb informed him of his suffering from the same ailment.

Webb's hearsay claims are without merit. The Superior Court did not abuse its discretion in admitting the mother's statements as to her trichomoniasis infection in that the thrust of the questions addressed to her related to matters within her personal knowledge.[12] *See* D.R.E. 602 ("A witness may [ ] testify to a matter [where] ... evidence is introduced sufficient to support a finding that [s]he has personal knowledge of the matter...."), not to hearsay expert matters; *cf. McLain v. General Motors Corp.,* Del.Supr., 569 A.2d 579, 584 (1990) ("When a witness testifies based on their own experience, knowledge and observation about *the facts in the case,* they are not giving "expert testimony," as that term is defined by the rules of evidence.[ ]") (footnote omitted). Hazewski's statement regarding the mother's condition is hearsay. *See* D.R.E. 801(c) (" '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The statement falls within an exception, however, and thus is admissible. *See* D.R.E. 803(3) ("The following [is] not excluded by the hearsay rule ... [a] statement of the declarant's then existing ... physical condition...."). Webb's prior statement to Hazewski is a nonhearsay party-admission. *See* D.R.E. 801(d)(2)(A) ("A statement is not hearsay [and is an admission] if ... [t]he statement is offered against a party and is [ ] his own statement...."). Thus, the trial court acted properly within its discretion with regard to its hearsay rulings.[13]

## V. DENIAL OF INSTRUCTION ON LESSER INCLUDED OFFENSE

Webb argues that there was sufficient evidence in the record to justify having the trial court charge the jury on sexual assault,[14] a lesser included offense of first degree rape. In support, he relies on some statements in the victim's testimony that Webb "fondled" her, which he argues supported conviction for sexual assault.

Webb's contention fails for deficiency of proof. A lesser included offense is appropriate only when "[t]here is a rational basis in the evidence for a verdict acquitting [a] defendant of the offense charged and convicting him of the included offense[ ]." 11 *Del.C.* § 206(c). This standard applies even where the defendant denies any involvement in the charged offense. *Miller v. State,* Del. Supr., 426 A.2d 842, 845 (1981). Where the evidence supportive of a requested lesser included offense is such that no reasonable jury could convict the defendant of the lesser rather than indicted charge, however, the trial court need not charge the lesser included offense.[15] *Slater v. State,* Del.Supr., 606

---

12. The pertinent exchange was as follows:
   BY [THE PROSECUTOR]:
   Q. After [the victim] was at the hospital, was she diagnosed with any kind of illness?
   A. Trichomoniasis, which I had the same thing.
   Q. How did you know you had it?
   A. Because I had—I went and got tested. They told me to go get tested.

13. Webb's challenge to admission of a documentary record of his treatment for trichomoniasis, promulgated by the Porter Center (a State public health facility), is without merit. The State Board of Health has the responsibility of receiving reports, investigating, and treating sexually transmitted diseases. *See* 16 *Del.C.* §§ 702 & 703. Thus, the Porter Center document did not require authentication. *See* D.R.E. 902(4) ("Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to ... [a] copy of an official record or report or entry therein, or of a document authorized by law ... and actually recorded ... in a public office.").

14. 11 *Del.C.* § 761, *revised by* 65 *Del.Laws* c. 494 (eff. July 9, 1986).

15. The defendant is not entitled to a lesser included instruction in order to facilitate rendering of a compromise verdict—where jurors surrender their conscientious convictions in order to reach an unanimous decision—for such verdicts are invalid. *Wilson v. State,* Del.Supr., 305 A.2d 312, 317 (1973).

A.2d 1334, 1338 (1992); *Ward v. State*, Del. Supr., 575 A.2d 1156, 1159 (1990).

In the instant case, some parts of the victim's testimony would have supported a conviction for sexual assault. That same evidence was also supportive of the charged offense, however. The evidence supportive of sexual assault overlapped, rather than being mutually exclusive of, the evidence for first degree rape. Having failed to highlight any evidence in the record that provides a rational basis for acquittal of first degree rape and conviction for sexual assault, Webb's argument must fail.

## VI. OVERRULING OF OBJECTION TO PROSECUTOR'S REMARKS DURING CLOSING ARGUMENT

■ Webb's final argument relates in part to the following comments by the prosecutor during her closing argument: "What bias did Detective Hazewski have? Is he suspect because of the—because he is a cop? Would he lie to you because he is a cop?" This argument was made in response to Webb's earlier suggestion to the jury during his testimony that Hazewski was lying. On appeal, Webb claims the above comments improperly forced the jury to choose between Hazewski's version of the facts and his own. This characterization of the comments is patently incorrect. *Compare Fensterer v. State*, Del.Supr., 509 A.2d 1106, 1111–1112 (1986) (finding improper a prosecutor's statement that necessarily implied that a defendant could be acquitted only if the jury found that certain police officers committed perjury).

■ Webb also argues that the prosecutor acted in an inflammatory manner by telling the jury that, if "[a]fter listening to the instructions and conscientiously applying them ... you will restore to [the victim] the dignity that was taken from her so many years ago. [Objection raised.] ... And then you will bring back a verdict of guilty." Although this type of argument is of questiona-ble propriety, in this particular case we find that "[t]he prejudicial weight of this comment is not so great as to warrant a reversal." *See Mason v. State*, Del.Supr., 658 A.2d 994, 998 (1995) (holding that defendant's right to a fair trial was not violated by prosecutor's statement that "the victim 'deserves the justice of our system'"); *accord Diaz v. State*, Del.Supr., 508 A.2d 861, 866 (1986) (finding no abuse of discretion in trial court's refusal to declare mistrial, where prosecutor in closing argument asked jury to "'remember that this is [the victim's] only shot at achieving justice as well[]'"). The instructions in the jury charge that the jurors should not treat counsel's remarks as evidence and should not decide the case based on passion, prejudice, sympathy, the consequences of the verdict, or any other improper motive support this conclusion.

## VII. CONCLUSION

This case, which involves alleged heinous acts occurring almost a decade ago, has already required two jury trials. It is most regrettable that this ugly case has to be sent back now for yet another trial due to prejudicial violations of the defendant's rights. Constitutional protections, including the one at issue here, are guaranteed to all our citizens in the bill of rights of the state and federal constitutions, however. It is the duty of the independent judiciary in a free society to enforce those protections regardless of the atrocious nature of the allegations of any case.[16]

We hold that the Superior Court committed reversible error in two respects: (i) its imprecise order limiting Webb's access to his counsel was overbroad and thus violated the Sixth Amendment; and (ii) its exclusion of Webb's proffered impeachment evidence of a material State witness constituted legal error. In all other respects, we find that the trial court committed no error. As to the findings of error, we **REVERSE** Webb's conviction for first degree rape and **RE-**

16. The late Chief Justice Warren E. Burger said: "We know that a nation or a community which has no rules and no laws is not a society but an anarchy in which no rights, either individual or collective, can survive." Warren E. Burger, *Delivery of Justice*, 303 (1990). Woodrow Wilson said, "So far as the individual is concerned, a constitutional government is as good as its courts. No better. No worse." Woodrow Wilson, *Constitutional Government in the United States*, 17 (1908).

MAND FOR A NEW TRIAL. Jurisdiction is not retained.